## Illinois Central Railroad Company v. Kelly.

(Decided January .14, 1916.)

### Appeal from Grayson Circuit Court.

1.  Master and Servant—Personal Injury to Servant—When Action for Under Employers' Liability Act Will Lie.—To authorize the recovery, under the Federal statute known as the "Employers' Liability Act," of damages by an employe for an injury sustained through the negligence of a common carrier, it must be alleged and proved that the injury was suffered while the employe was engaged in interstate commerce. It is not sufficient that the carrier in whose service the injury is sustained is engaged in interstate commerce. The true test is, is the work or service, in performing which the employe is injured, a part of the interstate commerce in which the carrier is engaged?

2.  Master and Servant—Interstate Commerce—Work Not Regarded Part of—When Federal Employers' Liability Act Not Applicable.— Where the employe of a common carrier is injured in loading on a car steel rails to be stored, which had previously been removed from a railroad track, because no longer suitable for use therein, and replaced by others, in performing such service the employe was not engaged in interstate commerce.

3.  Master and Servant—Employers' Liability Act—Failure of Proof —Law of State—Amendment of Petition to Conform to—Instructions—New Trial.—In this action, brought by appellee under the Employers' Liability Act, the evidence on the trial having failed to show any right of recovery in him under such act but conducing to establish such right under the law of the State, it was prejudicial error for the court to submit the case to the jury under instructions authorizing a recovery under the Employers' Liability Act. Instead of so doing, the court should have given appellee leave to amend his petition to conform to the law of the State and to the proof; and, upon the filing of such amendment, submitted the case to the jury under instructions applying the law of the State. If, however, appellee refused to avail himself of the right to amend, the court, in that event, should have given a peremptory instruction directing a verdict for the appellant;

. . and the failure of. the court to proceed as herein indicated. entitled appellant to the new trial. asked by it.

TRABUE, DOOLAN & COX, L. A. FAUREST and M. A. ARNOLD for appellant.

HAYNES CARTER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

On the trial of this action in the court below the appellee, Melvin Kelly, recovered of the appellant, Illinois Central Railroad Company, a verdict and judgment for $1,500.00 damages, resulting from injuries to his person, caused, as alleged in the petition, by the negligence of appellant and its servants superior in authority to him. Appellant was refused a new trial by the circuit court and its dissatisfaction with that ruling, and with the judgment, led to this appeal.

The action was brought under the Federal Employers' Liability Act. Appellant's answer denied the acts of negligence alleged in the petition and pleaded assumption of risk and contributory negligence on part of appellee. It appears from the record that appellee when injured was a track laborer in appellant's employ and that his injuries were received in loading on a flat car, from its right of way, unused steel rails, which had theretofore been removed from its railroad track and left on the right of way beside it.

According to the evidence introduced in his behalf, while appellee and other servants of appellant were loading one of the rails on the car under the direction of its foreman in charge of the work, and the end of the rail at which appellee was lifting had been raised to the height necessary to throw it on the car, but the other end had not been raised high enough for that purpose, the foreman gave the men handling it the command "throw away," that is, to cast the rail on the car, which they immediately obeyed, as was their duty, by attempting to cast the rail on the car; but as this, because of the position of the rail. at that time, could not be done, instead of landing on the car, the rail struck it and fell upon appellee's foot and ankle, thereby causing the injuries complained of. If appellee was injured in the manner claimed by him and as his evidence conduced to show, no doubt of the foreman's negligence could be

entertained. On the other hand, it is appellant's contention, and its evidence conduced to prove, that when the command to throw the rail was given by the foreman it was in the customary and a reasonably safe position to be thrown upon the car, and would have been thrown thereon without danger to those in charge of it, but for the negligence of appellee in failing to promptly obey the foreman's command.

The issues of fact made by the pleadings, and thus shown by the evidence, were submitted to the decision of the jury under instructions given by the court. It is, however, urged by appellant, as a ground 'for reversal, that the evidence did not bring the case within the provisions of the Federal Employers' Liability Act, and, that for this reason, the trial court erred in refusing the peremptory instruction, directing a verdict for appellant, asked by it at the close of appellee's evidence and again at the conclusion of all the evidence. This contention rests upon the theory that the work in which appellee was engaged when injured was not interstate commerce. Considering the pleadings as a whole, we think it fairly apparent that they make no issue as to the fact that appellant is an interstate as well as intrastate public carrier of freight and passengers, and is, therefore, engaged in interstate commerce. Therefore proof that such was its business was unnecessary; but, conceding this to be true, it does not follow that the work in which appellee was engaged at the time of receiving his injuries was interstate commerce.

In Pederson v. D. L. & W. R. Co., 229 U. S., 146, an employe of an interstate railroad carrier, killed while carrying a sack of bolts or rivets, to be used in repairing a bridge which was in use both in interstate and intrastate commerce, was held to be employed in interstate commerce within the meaning of the Employers' Liability Act of April 22, 1908, giving a right of recovery against the carrier for the death of an employe while so employed. In the opinion the Supreme Court of the United States said:

"Considering the terms of the statute (Employers' Liability Act), there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employe is employed by the carrier in such commerce. * * * That the defendant was engaged in

interstate commerce is conceded; and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But, independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * The point is made that the plaintiff was not, at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the

roundhouse to the track on which are the cars he is to haul in interstate commerce. * * *"

Under the interpretation given the Federal statute in the case, *supra,* it is manifest that if appellee had been injured while unloading rails that were to be used, and were later used, in repairing appellant's railroad track, there could have been no doubt of his right to maintain the action under the Federal Employers' Liability Act; but such was not the case. The rails, by one of which he was injured, had been removed from the track and new ones put in their places several days before he was injured. When taken from the track the old rails were laid out on the ground or sub-grade, outside of and parallel with the track, the space occupied by them being about four feet in width; and, as thus placed, they could not, even if allowed to permanently remain, have interfered with appellant's use of the track or its business as a carrier, and there was nothing in the evidence conducing to show that it was the intention of appellant to use these rails in its track elsewhere or that they were so used or even fit for such use. In view of this situation, we are unable to see how the later work of gathering up these old rails for the purpose of storing them elsewhere, or, perhaps, selling them as scrap steel, can in any sense be considered as a repairing of the track, or as necessary to appellant's engaging in interstate commerce. In other words, the evidence fails to show that there was any duty resting upon appellant as a carrier of interstate commerce to remove the rails.

We are fortified in this conclusion by the opinion in I. C. R. Co. v. Behrens' Adm'r, 233 U. S., 473, wherein it is declared that Congress intended by the provisions of the Employers' Liability Act of April 22, 1908, making every common carrier by railroad, while engaged in interstate commerce, liable in damages to any person "suffering injury while he is employed by such carrier in such commerce," to confine its application to injuries occurring when the particular service in which the employe was engaged was a part of interstate commerce. In that case it was held that a fireman employed by an interstate railway carrier on a switch engine, who was killed while aiding in the work of moving several cars, all loaded with intrastate freight, between two points in the same city, was not employed in interstate commerce within the meaning of the Federal Employers' Liability

Act, making every common carrier by railroad while engaged in interstate commerce liable to an employe "suffering injury while he is employed by such carrier in such commerce," although, upon completion of that task, the switching crew was to have gathered up and taken to other points several other cars as a step or link in both interstate and intrastate transportation.

We are not without authority in this jurisdiction for the conclusion expressed, for in L. & N. R. Co. v. Parker's Adm'r, 165 Ky., 658, this question was fully considered and decided. It was therein held that where a switch crew, at the time of an injury to a fireman on the switch engine, were engaged in switching an intrastate car from one part of the yard to another, but expected shortly to switch an interstate car from one part of the yard to another, and the switching of the intrastate car was done in order to enable the engine and crew to switch the interstate car upon another track, they were engaged in intrastate and not interstate commerce. After citing and quoting with approval from Pederson v. D. L. & W. R. Co., and I. C. R. Co. v. Behrens, *supra,* it is in the opinion said:

"As a matter of practical knowledge, we know that in railroad switching yards the switch engines are constantly engaged in switching both interstate and intrastate cars, and if it can be said as a matter of law that the crew of a switch engine, which is actually engaged in moving intrastate cars as preliminary to the ultimate moving of interstate cars, is then engaged in interstate commerce, there would never be a time when a switching crew would not be engaged in such commerce, in any railroad yards of any size. If a switching crew may be held to be engaged in interstate commerce when it is only handling intrastate cars, merely because the yard foreman has orders some time during that day or night to remove an interstate car from one part of the yard to another, and the removal of the intrastate cars is to be held merely preliminary to the ultimate removal of the interstate car, we are at a loss to understand when and under what circumstances such a crew could be held to ever be engaged in intrastate commerce. The true test is what character of commerce was the employe engaged in at the time of his injury, and not whether he was engaged at the time in one kind of commerce as a preliminary to the engagement in another kind. Suppose at

the time of Parker's injury there had been attached an interstate car to the engine, and it was being switched from one part of the yard to another with the preliminary purpose of removing an intrastate car from one part of the yard to another, would a contention that it was then engaged in intrastate commerce, merely because of the purpose in the near future to so engage, be considered for a moment?''

As the evidence failed to show that the work appellee was performing when injured was a service in interstate commerce, it necessarily follows that the trial court erred in submitting the case to the jury under instructions based on the Federal statute. Therefore appellant was entitled to the peremptory instruction asked by it, unless the recovery was authorized under the common law obtaining in this jurisdiction, and this is the only question remaining to be determined.

It is insisted for appellant that a recovery under the State law was unauthorized because the petition only stated a cause of action under the Federal statute, and that it was also entitled to the peremptory instruction because of the failure of the petition to allege, as required by the State law, that the injury sustained by the appellee was caused by the gross negligence of appellant's foreman. These contentions are unsound. It is true that the petition does not allege ''gross'' negligence on the part of appellant's foreman, but it does allege that appellee's injury was caused by his negligence, and the use of the generic word ''negligence'' in the petition is sufficient in a common law action like this, for a personal injury, without averring its degree. The degree of negligence, whether gross or ordinary, need not be stated, the allegation of negligence being sufficient to entitle the plaintiff to recover for any degree of culpable negligence that may be established by the evidence. Where a statute creates and defines an injury by neglect, the language of the statute, or equivalent words, must be used in averring the degree; but in other cases the general allegation of negligence will be sufficient, as it ''in general includes gross as well as ordinary negligence.'' Newman's Pleading & Practice, section 324-d; L. & N. R. Co. v. Mitchell, 87 Ky., 327; Ohio Valley, etc. Co. v. Heine, 159 Ky., 586.

The following concise statement of the law on this subject will be found in the opinion (Judge Pryor writing), in L. & N. R. Co. v. Raynes, 15 R., 423:

"This court has held, and such is the law, that under the general allegation of negligence in common law actions for injuries, you may establish the degree by proof, and it is not necessary to allege this degree, whether gross or ordinary, in order to make a cause of action, the averment of negligence being sufficient. This court has also held in numerous cases, beginning with the case of Collins v. L. & N. R. Co., 2 Duvall, 118, that a railroad company is liable for the gross neglect of a superior by which a subordinate is injured when in the same department of service, but for ordinary neglect the company is not responsible. * * *"

Among the later cases bearing on this question is that of C. N. O. & T. P. Ry. Co. v. Gardner, 165 Ky., 48, in which it is, in part, said:

"It is a well established rule in this jurisdiction, that in an action brought by a servant for injuries received through the negligence of an agent of the master, who is his (the servant's) superior in authority, and death does not result from such injuries, there can be no recovery, unless the negligence of the superior is gross. Ohio Val. C. & M. Co. v. Heine, 159 Ky., 586; C. & O. Ry. Co. v. Laney, 154 Ky., 38; United Iron Wks. v. Bowling, 153 Ky., 683; Milton's Admr. v. Frankfort & Versailles Traction Co., etc., 139 Ky., 57; L. & N. R. Co. v. Ford, 104 Ky., 456; C. & O. Ry. Co. v. Markham, 136 Ky., 245; I. C. R. Co. v. Elliott, 26 R., 669; I. C. R. Co. v. Coleman, 22 R., 898; Board v. C. & O. Ry. Co., 24 R., 1079."

It will not be denied that the record in this case furnishes evidence conducing to prove that appellee's injuries were caused by the gross negligence of appellant's foreman, and, while the evidence of appellant tended to disprove such negligence, the issue of fact thus made by the evidence, as well as that raised as to the question whether appellee was guilty of contributory negligence, should have been left to the decision of a jury, but not under the instructions that were given by the court, for, as before stated, they were based on the Federal statute and failed to advise the jury, that in order for appellee to recover, they must believe from the evidence, not only that the injuries sustained by appellee were caused by the negligence of appellant's foreman, but that such negli-

gence must have been gross. Moreover, the instruction on contributory negligence that was given by the court was inapplicable under the law of this State, for it allowed, as contemplated by the Federal statute, the contributory negligence of appellee, if any was shown by the evidence, to be considered by the jury only for the purpose of diminishing the damages that might be assessed in his favor, instead of advising them as required by the law of the State, that if such negligence on appellee's part, if any, so contributed to his injury that, but for same, he would not have been injured, it would defeat a recovery.

In Wabash R. Co. v. Hayes, 234 U. S., 86, the Supreme Court of the United States had before it the question, whether a declaration stating a good cause of action under the Federal Employers' Liability Act, could be treated as affording a basis for a recovery under the State law, upon its being demonstrated upon the trial that a recovery was unwarranted under the Federal statutes. In the opinion it is, in part, said:

"The plaintiff's declaration alleged that the injury occurred while the defendant was engaged, and while the plaintiff was employed by it, in interstate commerce. The other allegations were such that, with that one, they stated a good cause of action under the Federal Employers' Liability Act (35 Stat. at L., 65, chap. 149, U. S. Comp. Stat. Supp. 1911, p. 1322), and, without it, they stated a good cause of action under the common law prevailing in the state. There was a plea of not guilty; and upon the trial, the proof failing to show that the injury occurred in interstate commerce, the court, at the defendant's request, instructed the jury that the Federal Employers' Liability Act had no application to the case. Then, over the defendant's objection, the court treated the allegation respecting interstate commerce as eliminated, and submitted the case to the jury as one controlled by the common law prevailing in the state. The plaintiff recovered under that law. In the appellate court the defendant contended that, even though the allegation that the injury occurred in interstate commerce proved unwarranted, the declaration could not be treated consistently with the Federal act, as affording any basis for a recovery under the law of the state, common or statutory. But the court held otherwise and sustained the recovery under the state law. Whether that ruling

operated as a denial of a right or immunity to which the defendant was entitled under the Federal act, is the question, and the only question, sought to be presented by the assignments of error.

"Had the injury occurred in interstate commerce, as was alleged, the Federal act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the state; in other words, the Federal act would have been exclusive in its operation, not merely cumulative. Second Employers' Liability Cases (Mondou v. New York, N. H. &. H. R. Co.), 223 U. S. 1, 53-55, 56 L. Ed., 327, 347, 348, 38 L. R. A. (N. S.), 44, 32 Sup. Ct. Rep.; 169, 1 N. C. C. A., 875; St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S., 156, 158, 57 L. Ed., 1129, 1133, 33 Sup. Ct. Rep., 651; North Carolina R. Co. v. Zachery, 232 U. S., 248, 256 ante, 591, 34 Sup. Ct. Rep., 305; Seaboard Air Line R. Co. v. Horton, 233 U. S., 492, ante 1062, 34 Sup. Ct. Rep., 635. On the other hand, if the injury occurred outside of interstate commerce, the Federal act was without application, and the law of the state was controlling. Illinois C. R. Co. v. Behrens, 233 U. S., 473, ante 1051, 34 Sup. Ct. Rep., 646. That the injury did occur outside of interstate commerce was declared in the court's instruction to the jury, and the defendant, having requested the instruction, is bound by it. It, therefore, must be taken as settled that the right of recovery arose under the state law

"The plaintiff asserted only one right to recover for the injury, and in the nature of things he could have but one. Whether it arose under the Federal act or un the state law, it was equally cognizable in the state court; and had it been presented in an alternative way in separate counts, one containing and another omitting the allegation that the injury occurred in interstate commerce, the propriety of proceeding to a judgment under the latter count, after it appeared that the first could not be sustained, doubtless would have been freely conceded. Certainly, nothing in the Federal act would have been in the way.

"Instead of presenting his case in an alternative way, the plaintiff so stated it as to indicate that he was claiming only under the Federal act. And, when the proofs demonstrated that the injury arose outside of interstate commerce, and therefore that no recovery could be had

under the Federal act, the court was confronted with the question whether the declaration could be amended, or regarded as amended, to conform to the proofs. Holding that this could be done, the court treated the mistaken allegation that the injury occurred in interstate commerce as eliminated. Therein the court merely gave effect to a rule of local practice, the application of which was not in anywise in contravention of the Federal act. See Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.), 223 U. S., 56, 57, 56 L. Ed., 348, 349, 38 L. R. A. (N. S.), 44, 32 Sup Ct. Rep., 169, 1 N. C. C. A., 875. It follows that the contention that the defendant was denied a right or immunity to which it was entitled under the Federal act is not only untenable, but so devoid of color as to furnish no basis for this writ of error. See Sawyer v. Piper, 189 U. S., 154, 47 L. Ed., 757, 23 Sup. Ct. Rep. 633.''

It will readily be seen that the questions of law and fact involved in the case, *supra,* are so nearly identical with those of the instant case as to make the former controlling in the decision of the latter. If, in the instant case, the trial court instead of allowing it to go to the jury under instructions applicable to the Federal statute, had eliminated or disregarded the mistaken allegation of the petition that the injury occurred in interstate commerce, and submitted the case to them under instructions that would have conformed to the law of the State, the rule of procedure approved by the opinion, *supra,* would have been literally followed. However, the process of elimination there resorted to need not have been followed, for under the practice obtaining in this State the mistaken allegation of the petition that the injury occurred in interstate commerce might have been withdrawn, and the pleadings otherwise made to conform to the proof, by the filing of an amended petition; and as there must be another trial of the case the court may yet permit such an amendment to be filed.

For the reasons indicated the judgment is reversed and cause remanded to the circuit court for a new trial in conformity to the opinion.