# Chesapeake & O. Ry. Co. v. Rucker.

(Decided Nov. 25, 1932.)

HUNT & BUSH, B. L. KESSINGER, and JOHN M. THEOBALD for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

On the trial of this action in the court below, the appellee, Bonar Rucker, an infant, suing by his next friend, Cecil Rucker, recovered of the appellant the Chesapeake & Ohio Railway Company, a verdict and judgment for $5,000 for damages resulting from injuries to his person, alleged caused by the gross negligence of appellant and its servants superior in authority to him.

Appellant was refused a new trial and, complaining of such ruling and judgment, has prosecuted this appeal, assigning for grounds of reversal that:

1. Rucker was not engaged in interstate commerce at the time of the accident and was not entitled to maintain an action under the Federal Employers' Liability Act (45 UCSA secs. 51-59).

2. The circuit court admitted incompetent evidence over the objections of appellant, which was prejudicial, and for which a new trial should be granted.

3. The damages awarded are excessive.

The action was brought under the Federal Employers' Liability Act.

The appellee, hereinafter referred to as plaintiff, alleged in his petition that at the time and place and in the performance of his labor when injured both plaintiff and defendant were engaged in interstate commerce, in that he, together with his fellow servants of the road section crew, was engaged in handling stone upon its car and interstate track for the purpose of removing the stone therefrom, to facilitate its interstate transportation of passengers and freight.

As it is conceded by appellee that the facts are fairly stated in appellant's brief, so far as it goes, we shall adopt substantially the statement of facts as it there appears.

Bona Rucker when injured was working as a member of a section crew under the direction of their foreman, D. W. Caudill. On October 4, 1929, the foreman and his crew were engaged in unloading a car of crushed stone at Hitchins.

Shortly before the accident the Chesapeake & Ohio had moved a toolhouse from a point several yards away to a new location. This was done because, at the old location, the toolhouse obstructed the view at two road crossings over its tracks. The toolhouse had been erected at its new location about ten or twelve feet from the main line track. A wooden platform had been laid down connecting this toolhouse with the main tracks. The toolhouse, before its removal, had been used for the storage of tools and a motorcar, or hand car, used by the section men in their work, and was intended for the same use at the new location. The wooden platform was used by the employees in moving the equipment from the track to the toolhouse and from the toolhouse to the track.

To add to the sightliness and to provide a dry yard around the toolhouse, the Chesapeake & Ohio proposed to cover the ground with crushed stone, and the carload of stone involved in this accident was designed for that purpose.

The car containing the stone was a hopper car of two compartments, there being a door in the bottom of each compartment controlled by pins or levers. The method of operation was to "spot" the car at the desired point, and then release the doors and allow the stone to run out by gravity. This operation did not

always clear the car of the stone and it was necessary for the crew to go to the top of the car and with shovels push down such part of the stone as did not run out of its own weight.

The car in question was "spotted" or located on the main track at or near the toolhouse, and the section crew was called to unload the car and spread the stone.

The crew consisted of the foreman and seven men, including Rucker. It was intended to unload the western compartment first. The foreman instructed the crew to go to the top of the car to help run down the stone. The foreman and his assistant, Leslie Caudill, took positions on opposite sides of the car to release the pins or levers which held the floor of the compartment in position. Several men went up the west end. Two or three, including Rucker, went to the east end of the car and climbed to the top. Rucker started across to the west end, and when he reached a point over the western compartment, the foreman and his assistant, not knowing of his position, released the door, permitting the stone to run out. Rucker was caught in the stone and carried through the bottom of the car. His position and peril were discovered and he was promptly rescued by his fellow workers. He was smothered and made unconscious. His associates ministered to his needs and he shortly regained consciousness. He was placed on the platform between the toolhouse and the track, where he stayed for some time, and was then carried home.

Rucker claimed that his right eye was so injured by this accident as to cause a complete loss of vision in that eye. While he was somewhat bruised and scratched about his body, no serious complaint is made of any other injury than that to his eye.

It is shown by the evidence and admitted that Rucker's right eye was crossed and had been so since infancy. The "convergent squint" of his right eye was such as to destroy about 40 per cent. of its vision and it is the loss of its remaining vision of which he complains.

We will now address our attention to the consideration and disposition of appellant's reasons and grounds urged upon us for a reversal of the judgment, the first of which is that Rucker was not engaged in

interstate commerce at the time of the accident, and was therefore not entitled to maintain his action under the Federal Employers' Liability Act (45 USCA secs. 51-59), upon which he predicated it.

The facts, as disclosed by the record stated supra, show that Bona Rucker was, at the time and upon the occasion of receiving his alleged bodily injuries from which resulted, it is alleged, the loss of the sight of his right eye, employed as a member of appellant's road section crew at Hitchins, Ky., whose usual and customary employment as such was that of helping to maintain and keep in proper condition the roadbed and tracks of defendant's railway, then engaged in the interstate transportation of passengers and freight for hire.

It is also shown that, upon the occasion in evidence, this section crew was by the foreman told to hurry with the unloading of this car of crushed stone and its removal from the track so as to clear it before the expected arrival of its interstate passenger train, No. 23, which was scheduled to arrive at Hitchins at something over an hour thereafter and then some 30 or 40 miles distant.

Also it will be noted that plaintiff when injured was on top of the car preparatory to assisting in the unloading of this crushed stone from the car onto the track, and not in removing it from the track to the end of facilitating the clear and safe passage of this early expected interstate train, No. 23.

Plaintiff contends that by reason of the fact of his then employment with defendant being that of a section hand, whose usual work was to help keep in repair and proper maintenance appellant's interstate railway tracks, for the purpose of facilitating its interstate transportation thereover, and further that as he was upon the instant occasion of receiving his injury engaged in the labor of unloading the track obstructing car of stone from the track for the purpose of providing a clear and safe passage thereover for appellant's approaching passenger train, No. 23, he was therefore at such time engaged in an employment of interstate commerce and his claim for compensation, for injuries received while so engaged, was properly based upon the provisions of the Federal Employers' Liability Act, under which his action was brought.

Appellant contends, however, that the admitted facts in evidence as to the nature of the employment of the plaintiff Rucker, at the time of receiving his injury, conclusively show that he was not then engaged in the labor of interstate transportation or in labor so closely related thereto or connected therewith as to be properly a part thereof, and that therefore, there being no evidence substantially tending to show the plaintiff was engaged in such labor upon the occasion in question, the court erred in refusing appellant's offered peremptory instruction, asked at the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, insisting that the requested peremptory instruction tested the sufficiency both of plaintiff's pleadings and evidence as to whether he had properly instituted his action upon the provisions of the Federal Employers' Liability Act, predicated on his being then engaged in interstate transportation, but which the evidence failed to support.

While it may be conceded that "each case must be determined on its own peculiar facts, and no formula can be found 'invariable by circumstances or free from confusion by them in application,' " the question as to what was the character of the particular labor upon which an employee was engaged when injured, that is, whether or not its nature was that of interstate commerce, has time and again been before the courts; through their repeated consideration and review of this vexed question, certain rules or practical tests have been worked out and agreed upon for the proper determination of the nature and character of the particular labor; that is, whether or not it was an employment of interstate transportation at the particular time and place the injury of the employee was received.

This approved rule and agreed test to be applied to the employee's labor, in order to determine its nature and proper classification, with regard to its then relation to interstate commerce was announced by the Supreme Court in the case of Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 189, 60 L. Ed. 436, 438, L. R. A. 1916C, 797, to be:

"Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

The railroad company which was sued in the Shanks Case maintained a large machine shop for repairing locomotives used in both interstate and intrastate traffic. While employed in this shop, Shanks was injured through the negligence of the company. Usually he was employed in repair work, but on the occasion of his injury he was engaged solely in taking down, and putting into a new location, an overhead countershaft through which power was communicated to some of the machinery used in the repair work. The court, after referring to and discussing the decisions of various cases bearing upon the question, after quoting the Employers' Act, announced the following test for determining whether the employee, in any given case, was at the time of his injury, employed in interstate commerce within the meaning of the act:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U. S. 375, 49 L. Ed. 518, 25 S. Ct. 276), and that the true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it? * * *

"Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop."

Again was this same question presented for the consideration of the Supreme Court in the case of Chicago, B. & Q. R Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 518, 60 L. Ed. 941, and one very much like it in principle. There an employee, Harrington, was engaged in placing coal in coal chutes, thence to be supplied to locomotives engaged in interstate traffic. This employment was held not to have met the test laid down in the Shanks Case, and as to which the court said:

"That duty was solely in connection with the removal of the coal from the storage tracks to the coal shed, or chutes, and the only ground for invoking the Federal act is that the coal thus placed was to be used by locomotives in interstate hauls.

"As we have pointed out, the Federal act speaks of interstate commerce in a practical sense suited to the occasion, and 'the true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?' Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 60 L. Ed. 436, 438, 36 S. Ct. 188 (L. R. A. 1916C, 797), and cases there cited. Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use."

Again, in the later case of Chicago & N. W. Ry. Co. v. Bolle, decided November 23, 1931, 284 U. S. 74, 52 S. Ct. 59, 61, 76 L. Ed. 173, the same court, in discussing its adjudged proper test and rule for the determinination of the character of the employee's labor, thus spoke:

"Since the decision in the Shanks Case, the test there laid down has been steadily adhered to, and never intentionally departed from or otherwise stated. * * * In Illinois C. R. Co. v. Cousins, 241 U. S. 641, 60 L. Ed. 1216, 36 St. Ct. 446, as appears from the decision of the state court (126 Minn. 172, 148 N. W. 58 [6 N. C. C. A. 182]), an employee was engaged in wheeling a barrow of coal to heat the shop in which other employees were at work repairing cars that had been, and were to be, used in interstate traffic. The state court held that the employee came within the act, on the ground that the work which he was doing was a part of the interstate commerce in which the carrier was engaged, and cited Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 57 L. Ed. 1125, 33 S. Ct. 648, Ann. Cas. 1914C, 153 (3 N. C. C. A. 779). This court, however, repudiated that view, and reversed in an opinion per curiam on the authority of the

Shanks Case. In New York C. R. Co. v. White, 243 U. S. 188, 192, 61 L. Ed. 667, 670, L. R. A. 1917D, 1, 37 S. Ct. 247, Ann. Cas. 1917D, 629 (13 N. C. C. A. 943), it was held, applying the test of the Shanks Case, that employment in guarding tools, intended for use in the construction of a new depot and tracks to be used in interstate commerce, had no such direct relation to interstate transportation as was contemplated by the Employers' Liability Act (45 USCA secs. 51-59).''

Plainly the plaintiff Rucker does not by the evidence bring his labor, when injured, within the rule and test announced and applied in these cases supra, and it is our opinion, measuring it by the prescribed test of the Shanks Case, that he, at the time of receiving his injury, was clearly engaged in work not incidental to transportation or interstate commerce, but in a work very dissimilar, as being purely incidental to the furnishing of means and material to the unrelated task of delivering stone for bettering and improving, not the interstate track, but the local yard about appellant's toolhouse. The work upon which Rucker was engaged when going upon the car to assist in unloading the crushed stone ended when his crew unloaded the stone and scattered it upon the yard for bettering its condition where clearly the scattered rock was not intended to be used, directly or indirectly, in the transportation of anything, nor was its delivery there to be so used in any wise so closely related to such interstate transportation as to cause it to be practically a part of it. Certainly, too, Rucker's work upon this occasion was no more closely related to transportation than was that of the employee in the Harrington Case, who placed coal in the chutes for the use of locomotives engaged in interstate commerce; or of the employee in the Cousins Case, where he was engaged in wheeling a barrow of coal to heat the shop in which other employees were at work repairing cars used in interstate traffic; or in the White Case, where the employment upon which employee was engaged when injured was in guarding tools, intended for use in the construction of a new depot and tracks for use in interstate commerce; nor again was it different from the work of the employee in the still later case very like them, decided January 4, 1932, of C. & E. I. R. Co. v. Industrial Commission of Ill. and Joe Thomas, 284 U. S. 296, 52 S. Ct. 151, 152,

76 L. Ed. 304, where an employee of the railway company, in attempting to oil an electric motor while it was running, was injured by having his hand caught in the gears. The railroad was engaged in both intrastate and interstate commerce. The motor furnished power for hoisting coal into a chute, to be taken therefrom by, and for the use of, locomotives engaged in the movement of interstate freight.

The contention there made for the employee, that Thomas was employed in interstate commerce at the time of the injury, rested upon the decisions of the Supreme Court in Erie R. Co. v. Collins, 253 U. S. 77, 40, S. Ct. 450, 64 L. Ed. 790, 21 N. C. C. A. 1, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794. In the Collins Case the employee at the time of his injury was operating a gasoline engine to pump water into a tank for the use of locomotives engaged in both intrastate and interstate commerce, and in the Szary Case the duty of the employee was to dry sand by the application of heat for the use of locomotives operating in both kinds of commerce and was so employed when injured. In each of these two cases, the court held that the employee was engaged in interstate commerce at the time of his injury within the terms of the Federal Employers' Liability Act (45 USCA secs. 51-59), but the court upon its further review and criticism of the holdings made in these two cases, after approving the test announced in the Shanks Case, applied in the Harrington Case and approved as also applicable to the Thomas Case, concluded its opinion therein as follows:

"We are unable to reconcile this decision with the rule deducible from the Collins and Szary Cases, and it becomes our duty to determine which is authoritative. From a reading of the opinion in the Collins Case, it is apparent that the test of the Shanks Case was not followed * * * ; the words 'interstate commerce' being inadvertently substituted for the words 'interstate transportation.' The Szary Case is subject to the same criticism, since it simply followed the Collins Case. Both cases are out of harmony with the general current of the decisions of this court since the Shanks Case, Chicago & N. W. Ry. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 173, decided November 23, 1931, and they are now definitely overruled.

The Harrington Case furnishes the correct rule, and, applying it, the judgment below must be affirmed.''

Influenced and controlled by the reasons given and conclusions reached by the Supreme Court of the approved rule and test announced by it in these quoted cases, as furnishing the applicable and controlling measure and test for our determination of the character and nature of the work upon which plaintiff Rucker was engaged when injured, after subjecting it to the test prescribed in these cases, we conclude that his employment of unloading rock upon the toolhouse yard, upon which engaged when injured, was not one of interstate transportation, nor one so closely related thereto as to become practically a part of it. His work was clearly, upon the occasion in evidence, one very closely alike, both in principle and character of employment, to those shown in the instances stated in the Bolle and Thomas Cases, supra, wherein the employee in each case was held not to have been engaged upon the work of interstate transportation or work so closely related thereto as to be practically a part of it.

Appellee further contends, however, that his work when injured should be classed as being in its nature one of interstate transportation for the reason that he and his fellow servants of the section crew were directed by their foreman, not only to unload the rock onto the tracks, but to afterwards remove it therefrom in order to facilitate the passage of appellant's passenger train No. 23, expected to pass over this track in about an hour thereafter; that is, he argues, that his employment here was one interstate in its nature because the foreman expressed such purpose when directing this work of unloading and scattering the stone to be done by them, and therefore his work became interstate in character within the rule and principle announced in Southern R. R. Co. v. Puckett, 244 U .S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, App. Cas. 1918B, 69.

In this contention we are of the opinion that the appellee is not sustained, nor is it tenable upon the authority of the Puckett Case, relied on, as in the Puckett Case the employee, when injured, was carrying a jack to the scene of a wrecked car, for the *twofold* purpose of, by his then labor, releasing an employee caught thereunder and clearing the tracks of the wreck-

age. The court in the Puckett Case held that the employee was engaged in interstate commerce at the time of his injury, for the reason that one of the *primary purposes* in jacking up the car was shown by the evidence to have been the removal of wreckage from an interstate track to facilitate the passage of interstate cars.

The primary object of plaintiff's work in the instant case was the unloading of crushed rock from a car onto the yard, and the fact that the rock, after being unloaded from the car onto the track, would have to be removed, as was contemplated, in order that it might not become an obstruction thereon to interstate transportation, was merely secondary or incidental to the primary object of constructing a rock-covered yard around the toolhouse. In this work of plaintiff it is evident there was at the time when so engaged no dominant purpose or primary object in mind of facilitating or furthering the movement of interstate trains along the tracks. The fact that the removal of the stone from the tracks after being unloaded thereon was required in order to prevent its becoming, if left thereon, an obstruction hindering the passing of the expected passenger train, was a secondary or incidental consideration, which cannot now reasonably be allowed to convert this labor of unloading a rock car into a different character of work, having for its primary object the facilitating of interstate transportation, merely through the contingent circumstance of the section crews having to later remove from the track the obstruction of crushed rock placed by it thereon.

This distinction was observed in the case of L. & N. R. Co. v. Parker, Adm'r, 242 U. S. 14, 37 S. Ct. 4, 5, 61 L. Ed. 119, where it is stated:

"The difference is marked between a mere expectation that the act done would be followed by other work of a different character, as in Illinois C. R. Co. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153, and doing the act for the purpose of furthering the later work. See New York C. & H. R. R. Co. v. Carr (238 U. S. 260, 263, 35 S. Ct. 780, 59 L. Ed. 1298, 1299, 9 N. C. C. A. 1) (and other cases)."

Entertaining no doubt, therefore, under the guid-

ance of the principle and test announced in these cases cited supra, as to the correctness and propriety of our conclusion that the appellee Rucker was not at the time of his injury, when sent upon the car to assist in unloading the rock, an employee of appellant then engaged in interstate transportation or in work so closely related to it as to be practically a part of it, it therefore follows that he had no right of action under the Federal Employers' Liability Act, upon which his action was predicated, and therefore we conclude that the court erred in refusing to grant appellant's peremptory instruction.

Appellee further contends, however, that the plaintiff's petition was drawn in such way as to support a cause of action, whether declared under the Federal Employers' Liability Act or under the state law, and therefore, under the authority of the case of Jones v. C. & O. Ry. Co., 149 Ky. 566, 149 S. W. 951, if plaintiff upon his evidence failed to make out a case under the federal act, he was entitled to have his case go to the jury under the common law, and therefore appellant waived the interstate feature of his defense by failing to file a motion requiring him to elect.

However, while the first decision of this court made in the cited Jones Case might sustain the contention here made, it is sufficient to state that the court, in response to a petition for rehearing (Jones v. C. & O. Ry. Co., 153 Ky. 378, 155 S. W. 723), reached the conclusion that such portion of its opinion as announced such rule was unnecessary to the decision of the case and to such extent the petition for rehearing was sustained. Adversely to plaintiff's contention this court has repeatedly announced the proper rule to be that where the plaintiff's suit for damages for personal injuries against a railroad company was drawn under the state law and the plaintiff's proof showed that he was injured while engaged in interstate transportation, the plaintiff should have amended his petition to conform to the proof, but having failed to amend his petition, the defendant's motion for a peremptory instruction should have been sustained. The basis of the rule is that both state and federal courts take judicial notice of a federal statute. C., N. O. & T. P. Ry. Co. v. Tucker, 168 Ky. 144, 181 S. W. 940, 943. In this case, the court in the course of its opinion further stated:

"In the late case of I. C. R. Co. v. Kelly, 167 Ky. 745, 181 S. W. 375, the action was brought under the Federal Employers' Liability Act (45 USCA secs. 51-59), while the proof conduced to establish a cause of action under the state law; and the court, following the petition, submitted the case to the jury under instructions authorizing a recovery under the Employers' Liability Act.

"It will thus be seen that the Kelly Case presented the converse of the proposition now before us.

"In the Kelly Case, however, this court said that the trial court should have given the plaintiff leave to amend his petition to conform to the proof, and upon the filing of such amendment, it should have submitted the case to the jury under instructions applying the state law.

"And, it was there further held, that if the plaintiff should refuse to avail himself of the right to amend, the court should give a peremptory instruction directing a verdict for the defendant.

"We must therefore treat the decision in the Kelly Case as conclusive of the questions here raised, and hold that appellant's motion for a peremptory instruction sufficiently challenged the plaintiff's right to further proceed under the state law, and that the practice under the state law required the plaintiff to amend his petition to conform to the proof in order to have the case which he proved submitted to the jury, under proper instructions."

In accord therewith, further see Hines, Director General of Railroads, v. Burns' Administratrix, 189 Ky. 761, 226 S. W. 109, 111, where the like rule is declared as follows:

"In the Tucker Case, the Parker Case, and I. C. R. Co. v. Kelly, 167 Ky. 745, 181 S. W. 375, it was held that when a suit was brought under the federal statute, and the proven facts were insufficient to authorize the action under that statute, it was the duty of the plaintiff to amend his pleading to conform to the proof and proceed under the state law; and vice versa, if the action was brought under the state law, and the proof showed the in-

jury to be one sustained while plaintiff was engaged in interstate commerce, he should likewise amend his pleading. But, in either case, if he fails to do so, there should be an instruction directing a verdict for the defendant."

We deem it needless to further extend this opinion by citation of further authorities, inasmuch as we are of the opinion that the questions herein presented are fully determined and disposed of by the quoted applicable and controlling rules and tests announced in the cases cited supra, and have upon the authority of those reached the conclusion that the judgment of the lower court will have to be reversed for the reasons above indicated. Having reached this conclusion, requiring a reversal of the judgment, we deem it unnecessary to here amplify this opinion with a further discussion and disposition of appellant's assigned grounds No. 2 and No. 3 urged by it for reversal of the judgment, and only refer thereto for the purpose of here adding that all other questions presented by this record and not expressly determined in this opinion are left open and not to be considered as adjudicated in any future litigation between the parties based upon the same cause of action.

Wherefore the judgment is reversed.