## Hummel v. Pennsylvania Railroad Company

*Richard H. Klein*, for plaintiff.

*J. Simpson Kline*, for defendant.

LESHER, P. J., December 5, 1935.—Elias Hummel, the deceased husband of the claimant, was, during his lifetime, an employe of the Pennsylvania Railroad Company. He had been employed by the defendant company for a period of several years, but prior to March 1933 had been furloughed. On September 16, 1933, he went back to work for the defendant company, and for a period from September 16, 1933, down to December 23, 1933, he was engaged with other workmen in the repair of a pier of a railroad bridge of the Pennsylvania Railroad Company near Pottstown, Pennsylvania, which had been damaged by flood. This pier was one of the supports of a bridge over a creek, over which ran the main line of the Pennsylvania Railroad Company in its Wilkes-Barre division. According to the testimony, a short time prior to September 16th high waters had washed the foundation away from the pier, and loose stones were thrown around the bottom of the pier until the waters should recede and the pier could be permanently repaired. In order to build a new foundation around the pier, a cofferdam had been built, and the loose stones which had been thrown in were being taken out and thrown into the stream, above the pier, for the purpose of breaking the current of water above the cofferdam, and throwing the water aside to prevent it from washing out the cofferdam.

It was while working at this work that Elias Hummel, deceased husband of the claimant, was taken ill with what later on was found to be an attack of appendicitis. The illness of the decedent, however, was not a sudden attack but it would appear from the testimony

he had been complaining of pain in his abdomen practically the entire week prior to September 23d, and had been given first aid remedies by the crew cook for what he and the cook diagnosed to be indigestion. The decedent, while at work picking the stones from within the cofferdam and handing them to another workman, for the purpose of getting them away from the bridge pier, at about ten or eleven o'clock in the morning of September 23d, suddenly became so ill that he was taken from the place of his employment to the bunk car. In the afternoon of the same day, he was taken by truck a distance of about 65 miles, to his home in Selinsgrove, Pennsylvania, where he arrived about five or six o'clock in the afternoon.

Dr. R. W. Johnston, the family physician, was called, and testified that he saw the deceased about 6:30 in the afternoon of September 23d, and found him to be suffering from an attack of appendicitis. If the court understands the testimony correctly, the deceased was taken to his home on Saturday, and on Wednesday of the following week was taken to the Mary M. Packer Hospital, Sunbury, Pennsylvania, at which place he was operated upon for appendicitis, and the operation disclosed that he had a gangrenous appendix, which had ruptured with a spreading peritonitis. The doctor expressed his opinion that the appendix had been ruptured for several days. Elias Hummel died on October 1, 1933.

The doctor expressed an opinion that lifting the stones had caused the appendix to rupture. However, he also testified that the appendix was surely gangrenous on September 23d, the date on which the decedent was taken from his employment, and would likely have ruptured even without any strain of any kind.

Blanche S. Hummel, wife of the decedent, brought an action against the Pennsylvania Railroad Company to recover compensation for herself and her child.

The referee found in his sixth finding of fact that

Elias Hummel, on September 23, 1933, suffered an accident within the meaning of The Workmen's Compensation Act of June 2, 1915, P. L. 736, his finding being, in part, as follows:

"From all of the testimony and the circumstances surrounding this case, the referee finds as a fact that the strain incident to lifting these stones, coupled with the twisting of the body, a fortuitous bending, which, although accompanied by no outcry or evidence of violence, is sufficient to constitute an accident within the meaning of the Workmen's Compensation Act.

"We further find as a fact, that this accidental injury was the result of the rupturing of the appendix which in turn caused death."

The question was also raised whether or not the deceased was engaged in intrastate or interstate commerce. The referee, in the seventh finding of fact, found that the deceased was engaged in intrastate commerce, and, as a conclusion of law thereunder, that the deceased and the defendant were bound under the provisions of article 3, of The Workmen's Compensation Act, supra, and its amendments, and in accordance with the above findings of fact and conclusions of law, made an award to the claimant, Blanche S. Hummel, for herself and her child, Marjorie Hummel, the daughter of the deceased.

The Pennsylvania Railroad Company took an appeal to the Workmen's Compensation Board, which, in an opinion filed August 30, 1935, set aside the sixth finding of fact by the referee, to the effect that the decedent had suffered an injury due to the happening of an accident within the meaning of The Workmen's Compensation Act, supra, and made its finding to the effect that the decedent had not suffered an accident as contemplated by the act. The seventh finding of fact by the referee, that the deceased, on September 23, 1933, was engaged in intrastate commerce, was set aside by the Workmen's Compensation Board, and they made a finding of fact to the effect that the deceased, on September 23, 1933,

was engaged in interstate commerce, and that, therefore, the deceased and the defendant company were not bound by the provisions of the workmen's compensation laws of the State of Pennsylvania, and they therefore found, as a conclusion of law, that the claimant was not entitled to recover compensation under The Workmen's Compensation Act of the State of Pennsylvania, sustained the appeal of the defendant, dismissed the petition, and disallowed compensation to the claimant.

The claimant appealed to the Court of Common Pleas of Snyder County. This appeal raises two questions for the determination of the court: (1) Did the deceased, on September 23d, suffer an injury due to an accident, that would constitute an accident under The Workmen's Compensation Act? (2) Was the deceased, on September 23d, engaged in intrastate, or was he engaged in interstate, commerce?

In the case of Lacey v. Washburn & Williams Co., 309 Pa. 574, the Supreme Court defines what constitutes an accident within the contemplation of The Workmen's Compensation Act. The Supreme Court, on page 577, states: " 'If the incident which gives rise to the injurious results complained of can be classed properly as a "mishap," or "fortuitous" happening—an "untoward event, which is not expected or designed"—it is an accident within the meaning of the Workmen's Compensation Law'."

In the present case, there is evidence that the deceased, during practically the entire week prior to September 23d, had been suffering from abdominal pains. The testimony is to the effect that at the time of the accident in question he was engaged in picking stones from the ground within the cofferdam in question and lifting them a distance of four or four and a half feet to a platform from which they were thrown into the stream by another person. From the testimony it appears that these stones varied from 10 to 50 pounds in weight, but from the bulk of the testimony it would appear that the stones

that were being lifted at this particular time did not average 25 pounds in weight, and that most of them were lighter than that. There is no testimony that at the time the deceased left his place of employment at the cofferdam there was any mishap or fortuitous happening, or untoward event which was not anticipated or which would cause any particular injury to the deceased. There is no relevant testimony that the deceased, at the time he quit work, was lifting an unusually heavy stone, but it appears that he was engaged in his regular occupation.

The claimant attempted to introduce testimony that nine or ten hours after he had left his place of employment, and after he had been conveyed from his place of employment to his home in Selinsgrove, a distance of about 65 miles, he had told the doctor that he felt a sudden pain when he was lifting a stone. There was also an attempt to introduce testimony of statements to the same effect made to other witnesses. This testimony is not part of the res gestae, but is in the nature of a self-serving declaration, and is not competent. Statements made by a decedent as to his condition, when he returns home in the evening, are inadmissible: Riley v. Carnegie Steel Co., 276 Pa. 82.

In the case of Pelusi v. Mandes et al, 109 Pa. Superior Ct. 439, the court held that: "Although the claimant showed that her husband's death resulted from violence to the physical structure of his body, she failed to adduce any evidence that the violence was occasioned through the happening of any occurrence in the course of his employment calling for any extra exertion or strain, other than that required by his usual and ordinary labor for the day.

"In such circumstances, where there was no evidence of any accident, the claimant was not entitled to compensation and the judgment of the court below, sustaining the award for the claimant, will be reversed."

We feel that the testimony fails to disclose any testi-

mony upon which the physician could base his finding that the bursting of the appendix ensued as a result of any undue strain or exertion, or the happening of any fortuitous event during the forenoon of that day, or at any time, while working at that project, up to the time the deceased left his work on account of sickness, and that if there is any basis for such a finding, it is testimony which is irrelevant, immaterial and incompetent, being statements made by the deceased 10 or 12 hours after the happening of the event.

As we have heretofore stated, there is no testimony that the deceased, at the time his appendix is alleged to have been ruptured, was engaged in lifting a stone, or suffered any injury or strain. In every compensation case the claimant must first show the happening of some accident, and only after that has been done are the compensation authorities empowered to consider its alleged harmful result, and the burden of proof rests upon the claimant to establish that the decedent met with an accident within the provisions of The Workmen's Compensation Act, supra: Whitecavage v. The Philadelphia & Reading Coal & Iron Co., 116 Pa. Superior Ct. 540.

In the above case the Superior Court held: "Where an employee while in the course of his employment, is performing hard work, but of the same kind and in the same manner as he has been doing it for a long period, and while so engaged is stricken with apoplexy and death results suddenly from a cerebral hemorrhage, the performance of such hard labor is not of itself over-exertion, and the death of the employee is not the result of an accident within the meaning of the Workmen's Compensation Law."

The court is, therefore, of the opinion that the facts in this case do not justify the finding of the referee to the effect that the death of the decedent was the result of an accident within the meaning of the words of the compensation law.

On the second question, whether or not the deceased

was engaged in intrastate or interstate commerce, as heretofore stated, the referee found he was engaged in intrastate commerce.

The bridge in question, the pier of which was being repaired supported a double track of the main line of the Pennsylvania Railroad Company, which is engaged in both intrastate and interstate commerce. The evidence establishes the fact that the work which the decedent was performing on Saturday, September 23, 1933, and prior thereto during that week, with the other members of the crew, was the reinforcement and strengthening of the pier below the water of the creek or stream which the bridge spanned. That pier was one of the supports of the bridge which carried the two tracks of the main line of the Pennsylvania Railroad of the Wilkes-Barre division. This railroad was engaged in both interstate and intrastate commerce, and it is a well-settled principle of law that if there is an element of interstate commerce in traffic or employment the remedy of the employe is under the Federal Employers' Liability Act.

The fact that a railroad facility which a railroad employe helps to maintain is used to further both interstate and intrastate commerce does not make it presumptively an instrument of intrastate as against interstate commerce but, on the contrary, the presumption is rather the other way; the burden is on the plaintiff to overcome this presumption before he can recover. There is no testimony that the decedent was engaged in intrastate commerce.

The referee, in his finding that the deceased was engaged in intrastate commerce, seems to have based his conclusion on the case of Illinois Central R. R. Co. v. Kelly, 167 Ky. 745, 181 S. W. 375, which holds that a track laborer injured while loading on a flatcar at the railroad's right of way unused steel rails that had theretofore been removed from the railroad track and left on the right of way beside it, was not engaged in interstate commerce, for the reason that the rails had

been discarded, and were no longer in use for any purpose in connection with the operation of the railroad, which was engaged in interstate commerce.

The facts in this case, however, do not justify this conclusion. It was necessary, for the purpose of repairing the pier of this bridge, that a cofferdam be built. The stones that had been thrown around the pier for the purpose of protecting it during high water were not being discarded as useless, but were being thrown upstream for the purpose of breaking the current, and, as several witnesses testified, for the purpose of holding the cofferdam in place, and were being used in the construction of the cofferdam, and for the purpose of making the repairs, just as much as the framework of the cofferdam.

As a matter of fact, the stones were not allowed to remain in the stream after the work was completed, but, according to the testimony of one of the witnesses, were later removed and used for cribbing. The removal of the stones was also necessary in order to proceed with the completion of this work, and I can see no difference between the removal of these stones for the purpose of proceeding with the work, and removing any unnecessary ground which had been in place and had not been put there temporarily.

After the stones had been thrown out and the work had been completed, and the stones were being removed for the purpose of getting them out of the way, the case might then be on a parity with the removal of steel rails which had been removed from the railroad track and were no longer of any use in the operation of the railroad, as in the case heretofore cited.

We are, therefore, of the opinion that the Workmen's Compensation Board was correct in its finding as a conclusion of law that the cause of the decedent's death was not the result of an injury by an accident within the contemplation of The Workmen's Compensation Act, supra, while in the course of his employment, and also

that he was engaged on this particular morning, September 23, 1933, in interstate transportation, or in work so closely connected therewith as to be a part thereof, for the defendant, and that his widow is not entitled to recover compensation under The Workmen's Compensation Act, supra, and that the Workmen's Compensation Board was correct in dismissing claimant's petition and disallowing compensation.

And now, December 5, 1935, the findings of the Workmen's Compensation Board are sustained and affirmed, and the appeal of the claimant is dismissed. An exception is allowed the claimant, Mrs. Blanche S. Hummel, and a bill is sealed.

From A. Francis Gilbert, Middleburg.