## Eugene Bolle, Appellee, v. Chicago & Northwestern Railway Company, Appellant.

### Gen. No. 7,375.

1. MASTER AND SERVANT—*necessity that employee under Federal Employers' Liability Act be engaged in interstate commerce.* In order for an injured employee to recover against a railroad company under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, it is essential for him to show that he was employed by the company in interstate commerce at the time of the injury.

2. MASTER AND SERVANT—*test whether employee engaged in interstate commerce under Federal Employers' Liability Act.* The true test of whether a railroad employee was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, is, was he at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?

3. MASTER AND SERVANT—*employee heating station buildings from locomotive engine as engaged in interstate commerce under Federal Employers' Liability Act.* The fact that a railroad employee, who was hired to fire a locomotive engine to generate heat for station buildings, was putting coal into the tender at the time of injury and that the boiler generated steam for the station buildings does not show that he was actually engaged in work so closely related to interstate commerce as to be practically a part of it under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*

4. MASTER AND SERVANT—*employee working on engine coupled with interstate engine as being engaged in interstate commerce under Federal Employers' Liability Act.* The fact that the locomotive engine used to generate heat for station buildings, which engine was being fired by an employee who was putting coal into the tender at the time of his injury, was coupled with other engines being prepared for inter-

state transportation and that he was directed to accompany his engine to another point for coal and water, does not show that he was acting in furtherance of interstate commerce under the Federal Employers' Liability Act, ch. 114, ¶ 321 *et seq.*

Appeal by defendant from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded. Modified opinion filed June 27, 1927. Rehearing denied October 19, 1927. (Original opinion see 235 Ill. App. 380, reversed and remanded with directions by the Supreme Court in 324 Ill. 479.)

NELSON J. WILCOX, NYE F. MOREHOUSE and I. C. BELDEN, for appellant.

RYAN & ROSENTHAL and PAUL MACGUFFIN, for appellee; JOSEPH D. RYAN, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

On November 15, 1922, appellee entered the employment of appellant, his duties being to watch engines, sand them, operate turntables and perform other like services in the roundhouse of appellant near Waukegan, Illinois. He was also engaged to fire either the stationary boiler or a locomotive engine which supplied heat for appellant's passenger depot, the baggage room in the depot, the roundhouse, the foreman's office, the engineer and fireman's register and lock room, the bunk house, and other like buildings and offices of appellant. On December 4, 1922, the stationary boiler was temporarily out of repair and appellee was firing the locomotive engine which supplied heat to these various buildings. On this particular day appellee went to work about four o'clock in the afternoon and about nine o'clock of the same evening he was directed to accompany his engine to Beach for coal and water. Beach was in the yards of appellant four miles north of appellant's Waukegan station.

The engine and tender of appellee were thereupon attached to three other engines and the four engines being so coupled together were propelled northward by the most northerly engine, which engine was immediately north of the engine upon which appellee was riding. These four engines so coupled together arrived at Beach and the engine of appellee took water, but before the tank was completely filled the engines were moved north to a side track in order to permit a through train to pass. The engines remained on the side track only a few minutes and then started back to the water tank and coal chutes, the motive power at that time being furnished by the most southerly engine. The engines stopped and the engine farthest south was filled with coal. Again the four engines moved southward, the most southerly engine furnishing the power and the second engine toward the south and also the third one (upon which was appellee) were both placed opposite coal chutes. Appellee saw the man on the engine immediately south of him jerk the chain and start taking coal on his engine and appellee followed his example and did likewise. Appellee had no duties to perform with reference to the operation of any of the engines, not even his own, nor was it his duty to coal his engine although he mistakenly thought it was and while so engaged in taking coal the engine immediately north of him, without notice or warning, moved northward suddenly and appellee's leg was crushed between the cab of his engine and the coal chute and he received injuries as a result of which it became necessary to amputate his right leg above the knee. Upon the trial a jury returned a verdict awarding the plaintiff damages in the sum of $20,000.00 and from the judgment rendered upon that verdict appellant has perfected this appeal.

Appellee brought this suit basing his right to recover upon the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, and the controlling

question for decision in this case is, was appellee at the time of the injury employed in interstate commerce within the meaning of the Federal Act? The Federal Act declares: "Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," and in order to recover it was essential for appellee to show not only that appellant was engaged in interstate commerce at the time of the injury but also that he was then employed by appellant in such commerce, and the true test of employment in such commerce in the sense intended is, was appellee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? *Shanks v. Delaware L. & W. R. Co.*, 239 U. S. 556.

It is apparent that appellee was not at the time he was injured engaged in interstate transportation but was his work so closely related to it as to be practically a part of it? His general employment was to fire the locomotive which was then being used as a substitute for a stationary boiler and which furnished heat for appellant's station and other buildings, and it is insisted that this depot and other buildings were instrumentalities of interstate commerce and his work was so closely related to the work of interstate commerce as to be practically a part of it. Appellee concedes that the character of his general employment is not controlling but that the service that was being rendered at the time the injury was suffered must determine whether or not appellee was under the provisions of the act. *Shanks v. Delaware L. & W. R. Co.*, *supra*.

We regard the decision of the United States Supreme Court in reversing the judgment of the Supreme Court of Minnesota in the case of *Illinois Cent. R. Co. v. Cousins*, 241 U. S. 641, as controlling authority in

this case. In the *Cousins* case it appeared that the plaintiff was a laborer employed by the railroad company in its yards and shops and was injured while wheeling a barrow full of coal intended to be used in heating stoves in a shop where other employees of defendant were engaged in repairing cars, many, if not all, being cars that moved only in interstate commerce. The Minnesota Supreme Court upon the authority of *Pedersen v. Delaware L. & W. R. Co.,* 229 U. S. 146, held the plaintiff was engaged in interstate commerce but this judgment was reversed by the Supreme Court of the United States upon the authority of *Delaware L. & W. R. Co. v. Yurkonis,* 238 U. S. 439, and *Shanks v. Delaware L. & W. R. Co., supra.* In the *Yurkonis* case, *supra,* it was held that an employee of a railway company who received injuries while mining coal in a colliery owned and operated by the railway company such coal being intended to be used by the company in its conduct of interstate commerce could not invoke the provisions of the Federal Act, and an action based upon such allegations was not within the terms of such act. In the *Shanks* case, *supra,* it was held that an employee in a machine shop, operated by a railway company, in which parts of locomotives used in interstate and intrastate transportation were repaired, was not employed in interstate commerce within the meaning of the Employers' Liability Act, it appearing that he was injured while engaged in taking down and putting into a new location an overhead countershaft through which power was communicated to some of the machinery used in the repair work.

We are unable to distinguish the facts in the instant case from the facts in these cases. Appellee was hired to perform the duties of fireman of a stationary boiler and of a locomotive which was being used as a substitute therefor. At the time he was injured he was putting coal into the tender from which he would later shovel it into the firebox. We do not think that

the fact that this boiler generated steam which heated the passenger station and other buildings of appellant shows that he was actually engaged in work so closely related to interstate commerce as to be practically a part of it. This work was too remote from interstate transportation to be practically a part of it and therefore appellee is not in a position to invoke the benefits of the Federal Act but must look for redress to the laws of this State wherein the accident occurred.

It is conceded by appellant that the three engines coupled to the engine upon which appellee was at the time of the injury were being prepared for interstate transportation, and it is insisted by appellee that when his engine was coupled with the three engines and he was directed to accompany his engine to Beach for coal and water, he became a necessary and essential part of that movement; that he was actually assisting and co-operating with the other servants of appellant and that this movement was a necessary preparatory movement in aid of interstate transportation. In support of this contention appellee cites the case of *New York Cent. & H. River R. Co. v. Carr,* 238 U. S. 260, where it was held that a brakeman on a freight train running between points in the same State, the freight train containing some cars loaded with interstate freight, was injured while attempting, in the course of his employment, to set the brake on an intrastate car which had been cut out of the train and backed into a siding, was employed in interstate commerce where the setting of such brake was necessary in order that the engine to which the car was attached might, when uncoupled, return to the train and proceed on its journey. Appellee also relies upon the case of *Louisville & N. R. Co. v. Parker,* 242 U. S. 13, where it appeared that a railway fireman of a switching engine was killed when his engine struck a caboose while transferring an empty car from one switch to another, such movement being simply for the purpose

of reaching and moving an interstate car, and the court held that the purpose would control and the business would be interstate.

Appellee also cites *Pedersen v. Delaware L. & W. R. Co.*, 229 U. S. 146; *North Carolina R. Co. v. Zachary*, 232 U. S. 248; *New York Cent. & H. River R. Co. v. Carr, supra,* which hold that where one is injured while preparing an engine for an interstate trip he is entitled to the benefits of the Federal Act, although the accident occurred prior to the actual coupling of the engine to the interstate cars.

Appellee also relies upon the case of *Erie R. Co. v. Collins,* 253 U. S. 77, where it is held that a railroad employee operating a pumping station which consisted of a water tank and an engine for pumping purposes, through which instrumentalities water was supplied to engines engaged in interstate and intrastate traffic, was engaged in interstate commerce while in attendance at the pumping station.

All of these cases, in our opinion, are clearly distinguishable from the case under consideration. At no time was appellee engaged in interstate work, while in the cases cited and relied upon by appellee the parties at the time of their respective injuries were doing work incidental to their interstate employment. Under the authority of the cases heretofore cited appellee cannot be said to have been engaged in interstate commerce by virtue of his general employment in heating the depot and other buildings of appellant. The fact that his engine had a physical connection at the time of his injury with three other engines which were being prepared for interstate transportation cannot be said to have been in furtherance of interstate transportation. Appellee was not preparing his engine for interstate transportation nor was he doing anything in any way related to interstate transportation. His engine was being provided with fuel not for motive power but simply to generate heat to warm appellant's depot and other buildings.

Our Supreme Court in *Heed v. Industrial Commission*, 287 Ill. 505, held that a janitor who was injured while splitting kindling wood for the purpose of building fires in the stoves which warmed the shops and roundhouse in which machinery and engines were housed and repairs there made on interstate engines, was not engaged in interstate commerce within the meaning of the Federal Act.

Being of the opinion that appellee, from the facts disclosed in this record, was not engaged in interstate commerce within the meaning of the Federal Act at the time he was injured, it is not necessary for us to prolong this opinion or discuss the other errors assigned. The judgment of the court below is reversed, and the cause remanded to the circuit court of Lake county for a new trial.

*Reversed and remanded.*

ADDENDA. This opinion as modified in compliance with the mandate of the Supreme Court is ordered to be refiled.