## CHICAGO & NORTH WESTERN RAILWAY CO. *v.* BOLLE.

No. 60. Argued October 28, 1931.—Decided November 23, 1931.

*Mr. Samuel H. Cady,* with whom *Messrs. Nelson J. Wilcox* (who was prevented by illness from arguing the case) and *Ray N. Van Doren* were on the brief, for petitioner.

*Mr. Joseph D. Ryan* argued the case, and *Mr. John P. Bramhall* also appeared, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner is a common carrier by railroad engaged in the interstate and intrastate transportation of passengers and freight. Respondent was employed by petitioner to

fire a stationary engine which was utilized to generate steam for the purpose of heating the passenger depot, baggage room, and other structures and rooms used for general railroad purposes at Waukegan, Illinois. The steam was also used to heat suburban passenger coaches while standing in the yards. Some of these coaches, taken off of interstate trains moving out of Chicago, were heated when necessary before being taken up by other interstate trains to be carried back. A way car and bunk cars, converted into stationary structures and occupied by some of the employees engaged in the track maintenance and bridge and building departments, were likewise heated; and sometimes steam was used to prevent freezing of a turntable used for turning engines employed both in interstate and intrastate traffic.

On the occasion in question, the stationary engine was temporarily out of order, and, in accordance with the usual practice, respondent had been making use of a locomotive engine as a substitute. While thus employed he was directed to accompany this locomotive engine to a place about four miles distant to obtain a supply of coal. For that purpose the engine was attached to and moved with three other locomotive engines then being prepared for use in interstate transportation. While coal was being taken upon one of the locomotives, respondent was seriously injured, through what is alleged to have been the negligence of petitioner.

The sole object of the movement of the substitute engine was to procure a supply of coal for the purpose of generating steam. Its movement was in no way related to the contemplated employment of the other three locomotives in interstate transportation; and its use differed in no way from the use of the stationary engine when that was available.

There is evidence that respondent, at other times, had been engaged in supplying other engines with coal and

water, firing live engines, and turning a turntable; but his employment at the time of the injury was confined to firing the stationary 'or locomotive engine for the sole purpose of producing steam. The character of the work which he did at other times, therefore, becomes immaterial. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558; *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 179.

The action was brought under the Federal Employers' Liability Act (c. 149, 35 Stat. 65; Title 45, c. 2, U. S. C.) to recover damages for the injury. There have been three trials of the case. In the first the verdict and judgment was for the respondent, which upon appeal was reversed by the intermediate appellate court, upon the ground that the evidence failed to show that respondent was engaged in interstate commerce when injured. 235 Ill. App. 380. This judgment of the appellate court was reversed by the supreme court. 324 Ill. 479; 155 N. E. 287. After remand, there was another trial, resulting in a directed verdict and judgment for petitioner; and this judgment the appellate court, following the decision of the supreme court of the state, reversed. 251 Ill. App. 623. Upon the third trial, judgment upon a verdict was entered in favor of the respondent. This the appellate court affirmed, 258 Ill. App. 545, and the supreme court refused certiorari to review the cause.

The appellate court, in holding upon the first appeal that respondent was not engaged in interstate commerce, applied the rule laid down in the *Shanks* case, *supra;* and in so doing was clearly right.

The railroad company which was sued in the *Shanks* case maintained a large machine shop for repairing locomotives used in both interstate and intrastate traffic. While employed in this shop, Shanks was injured through the negligence of the company. Usually he was employed in repair work, but on the occasion of the injury he was

engaged solely in taking down, and putting into a new location, an overhead countershaft through which power was communicated to some of the machinery used in the repair work. The Employers' Liability Act provides that "every common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," if the injury be due to the negligence of the carrier, etc. This court, at page 558, after quoting the words of the act, laid down the following test for determining whether the employee, in any given case, comes within them:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co.* v. *United States,* 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it."

It will be observed that the word used in defining the test is "transportation," not the word "commerce." The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury was engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation or

in work so closely related to such transportation as to be practically a part of it.

Since the decision in the *Shanks* case, the test there laid down has been steadily adhered to, and never intentionally departed from or otherwise stated. It is necessary to refer to only a few of the decisions. In *Chicago, B. & Q. R. Co.* v. *Harrington, supra,* an employee engaged in placing coal in coal chutes, thence to be supplied to locomotives engaged in interstate traffic, was held not to have met the test. In *Illinois Central R. Co.* v. *Cousins,* 241 U. S. 641, as appears from the decision of the state court (126 Minn. 172; 148 N. W. 58), an employee was engaged in wheeling a barrow of coal to heat the shop in which other employees were at work repairing cars that had been, and were to be, used in interstate traffic. The state court held that the employee came within the act, on the ground that the work which he was doing was a part of the interstate commerce in which the carrier was engaged, and cited *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146. This court, however, repudiated that view, and reversed in an opinion *per curiam* on the authority of the *Shanks* case. In *New York Central R. Co.* v. *White,* 243 U. S. 188, 192, it was held, applying the test of the *Shanks* case, that employment in guarding tools, intended for use in the construction of a new depot and tracks to be used in interstate commerce, had no such direct relation to interstate transportation as was contemplated by the Employers' Liability Act.

The rule announced by the *Shanks* case has been categorically restated and applied also in the following cases among others: *Southern Pacific Co.* v. *Industrial Accident Comm.,* 251 U. S. 259, 263; *Industrial Commission* v. *Davis,* 259 U. S. 182, 185; *Baltimore & O. S. W. R. Co.* v. *Burtch,* 263 U. S. 540, 543. The applicable test thus firmly established is not to be shaken by the one or two

decisions of this court where, inadvertently, the word "commerce" has been employed instead of the word "transportation."

Plainly, the respondent in the present case does not bring himself within the rule. At the time of receiving his injury he was engaged in work not incidental to transportation in interstate commerce, but purely incidental to the furnishing of means for heating the station and other structures of the company. His duty ended when he had produced a supply of steam for that purpose. He had nothing to do with its distribution or specific use. Indeed, what he produced was not used or intended to be used, directly or indirectly, in the transportation of anything. It is plain that his work was not in interstate transportation and was not so closely related to such transportation as to cause it to be practically a part of it. Certainly that work was no more closely related to transportation than was that of the employee in the *Harrington* case, who placed coal in the chutes for the use of locomotives engaged in interstate transportation; or that of the employee in the *Cousins* case, who supplied coal for heating the shop in which cars used in interstate traffic were repaired. The work of the employees in those cases and that of the respondent here are, in fact, so nearly alike in their lack of necessary relationship to interstate transportation, as to be in principle the same.

*Judgment reversed.*