### TEXAS & P. RY. CO. v. RAMPY.
### No. 1259.

Court of Civil Appeals of Texas. Eastland.
April 20, 1934.

Rehearing Denied May 18, 1934.

**388**

Shropshire & Bankhead, of Weatherford, and T. D. Gresham and R. S. Shapard, both of Dallas, for appellant.

Grisham Bros. and J. A. Lantz, all of Eastland, for appellee.

HICKMAN, Chief Justice.

Forty-five assignments of error are briefed in this cause, but, since we have determined that the judgment of the trial court must be reversed, we shall discuss only the questions upon which the reversal is ordered and those which will probably arise upon another trial. Our statement of the case will be based exclusively upon appellee's testimony. He offered no fact witness other than himself, and, in deference to the findings of the jury, we shall regard his testimony as true and disregard all testimony in conflict therewith.

Appellee testified that during the month of January, 1932, he was in the employ of appellant as section foreman at Ranger, and had been so employed at that place for five

or six years; that his section crew consisted of four men besides himself; that W. L. Beach was appellant's district roadmaster and appellee's immediate superior; that about January 27, 1932, Beach directed appellee to take his section crew and meet him (Beach) at the Ratliff spur track at Ranger for the purpose of repairing same; that, in response to that order, he and his crew met Beach there at the appointed time and were ordered by Beach to remove a mudsill from the end of a small bridge in said spur track and to replace same with sound timber. The mudsill was approximately the size of a railroad tie, and was estimated to weigh 800 pounds. In order to remove this mudsill, appellee and his men cleaned the mud from around it, jacked it up, stuck picks in it, and pulled it out. After it was pulled out, a question arose between appellee and the roadmaster, Beach, as to the disposition to be made thereof. Appellee suggested that it be dumped in the ravine under the bridge, but Beach replied, "No, pick it up and bring it out of there." Appellee assisted his men in lifting the mudsill, and, while he was lifting same, he felt a burning sensation, similar to the sting of a wasp, in his groin.

Appellant was convicted of negligence in the following particulars: (1) In ordering the work of moving the mudsill to be performed by an insufficient number of men; (2) in failing to furnish grabhooks for the use of the workmen in moving the mudsill; (3) in ordering the work to be performed without the use of a section jack; and (4) in requiring appellee and his crew to raise the mudsill from the ground by lifting at both ends at the same time. Each of these grounds of negligence was found to be a proximate cause of the injuries. The damages suffered were found to be $4,958.-33. Judgment was rendered in accordance with the verdict, and this appeal followed.

Appellant challenges the sufficiency of the evidence to sustain the several findings of negligence and proximate cause, and we shall first consider these assignments. Appellee testified that in December, 1930, more than a year before he sustained the injuries involved in this suit, and while he was engaged in the same employment as section foreman for appellant, he strained himself in lifting a rail and produced a hernia. He made no report whatever of this injury to his employer, or to any of his fellow workmen, but wore a truss continu-

ously from that time to the date of the trial. It was his duty, under the instructions of his employer, to report this injury to his employer. He intentionally failed to do so, assigning as his reason therefor that he feared it would cause him to be dismissed from the service. After sustaining this injury, and prior to the time of receiving the injury which is made the basis of this suit, appellee was a patient in appellant's hospital at Marshall, Tex., for several days, and was again a patient there after receiving his last injury. He did not inform the physicians and surgeons in the hospital that he had a hernia, but testified that, had they requested an examination of his body, he would have left the hospital. Damages are not sought herein for the injuries sustained in December, 1930, but only for those sustained in January, 1932. The only injury sustained on the latter date, according to appellee's own testimony, was an aggravation of the hernial condition theretofore existing. There is no evidence that any of appellee's men were injured by lifting this mudsill, and no evidence from which it could be reasonably concluded that appellee would have been injured thereby had it not been for his hernial condition. When appellant's roadmaster directed this work to be done, he had the right to assume that appellee was physically sound. The only reason he did not know that was not a fact was because appellee had deliberately withheld that information, in direct violation of his instructions. There is no evidence that any grabhooks or jacks would have been required or needed had appellee been in the sound physical condition in which the roadmaster had the right to assume him to be, and the failure to furnish them should not, therefore, be held to be negligence. It cannot be said with reason that the roadmaster was negligent in directing these men to lift the mudsill when ordinarily it would not have been dangerous to do so, and the only fact rendering it dangerous was one exclusively within appellee's knowledge, and which it was his duty to disclose. Neither will the evidence support the findings of proximate cause made in connection with the several grounds of negligence, for the consequences were not reasonably to be foreseen by the roadmaster. His lack of knowledge that appellee had a hernia prevented his foreseeing that it would be aggravated. We are unwilling to permit the findings of the jury on negligence and proximate cause to stand.

■ The trial court did not err in refusing the general charges requested by appellant. In a case submitted on special issues, it is not error for the trial court to refuse to give the jury a general charge on the law of the case. Standard v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 47 S.W.(2d) 443; Texas & Pacific Ry. Co. v. Foster (Tex. Civ. App.) 58 S.W.(2d) 557; Texas & Pacific Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249.

■ The contention that appellee was, at the time of his injury, engaged in interstate commerce, for which reason appellant's liability should be measured by the terms of the Federal Employers' Liability Act (45 USCA §§ 51–59), is overruled. The spur track upon which appellee was working at the time he received his injuries did not belong to the railroad company, but to Ratliff Feed Company. This track was maintained under a contract between the railway company and the owner, whereby the railway company was a kind of special contractor in the maintenance thereof. All expense of maintenance was paid by the Ratliff Feed Company. The track was used exclusively for its benefit, and, in the event the track had not been maintained, the carload shipments to it would have been handled as those to other customers of the railway company. In his usual and customary work, appellee was engaged in interstate transportation, for his work in the main was to keep in repair a section of appellant's railroad, but appellee's status is to be determined, not by his usual and customary employment, but by the nature of the work in which he was engaged at the very time of the injury. Chicago & N. W. Ry. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 173; Erie Ry. Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319. Was appellee engaged in interstate transportation, or in work so closely related to it as to be practically part of it at the time of his injury? We think not. Ratliff Feed Company was not a common carrier. The movement of interstate commerce was in no manner affected by the fact of whether or not Ratliff Feed Company kept its private spur in repair. Its failure to do so would affect only the method of delivery after shipments reached their destination, and it would be extending the rule too far to classify the work in which appellee was engaged as being so closely related to interstate transportation as to be practically a part thereof. The case of Liberti v. Staten Island Ry. Co., 180 App. Div. 90, 167

N. Y. S. 478, affirmed in 223 N. Y. 682, 119 N. E. 1053, presents a statement of facts practically identical with that in this record on this question, and it was there held that the laborer was not engaged in interstate commerce. We think the reasoning of that case is sound.

The other questions presented will probably not arise upon another trial. Because of the insufficiency of the evidence to support the findings of the jury upon negligence and proximate cause, the judgment of the trial court is reversed, and the cause is remanded.

### On Rehearing.

In his earnest motion for rehearing, appellee insists that our opinion was based upon questions not presented in appellant's brief and upon a theory different to that on which it was tried below. In this we think he is in error. Appellant's brief was a very long one, covering 158 pages of printed matter. It contained 45 assignments of error with a like number of propositions. It is true that a large part of the argument was devoted to the contention that appellee was engaged in interstate transportation at the time he received his injuries, but it is none the less true that the brief sets out practically all the evidence introduced upon the trial, that assignments of error complain of the action of the trial court in submitting the different issues to the jury on the ground there was no evidence warranting their submission, and that, by separate assignments, the sufficiency of the evidence to sustain these various findings is challenged. We therefore have assignments, propositions, and statements, the effect of which was to cause us to examine the statement of facts to determine whether, in our opinion, there was contained therein sufficient evidence to support the different findings. We consulted the statement of facts in response to assignments of error brought forward in appellant's brief, making it our duty to do so.

By a separate motion we are asked to correct a finding of fact made in our opinion, as follows: "The mudsill was approximately the size of a railroad tie, and was estimated to weigh 800 pounds."

The record on this question is in this condition: Appellee himself testified as follows:

"Q. Is that what is known ordinarily as a tie under a railroad, or a mudsill under a bridge? A. It is a mudsill under a bridge; it is the same size, only it was a mudsill.

"Do you know about the weight of that mudsill, approximately? A. Well, I figured it weighed at least 800 pounds. It might not have weighed quite so much, maybe more."

It is pointed out in the motion that the same witness later on in his examination gave the following testimony:

"Q. What kind of timber did you take out? A. We took out a 12x12, or 12x14."

The whole matter seems relatively unimportant. Appellee is in no position to request that we find contrary to his own testimony. The testimony last above set out conveys no definite idea of size, the length not being stated. We are called upon to make a finding that the sill was 12 inches wide by 12 inches thick by 14 feet long. We are referred to no evidence of its length, and certainly could not make that finding. The only material fact about the matter is the weight. It would certainly be no more dangerous to handle a large body of a given weight than a small one of the same weight. It occurs to us that the danger would be less.

The motion for rehearing and the motion for correction of findings of fact are overruled.