**NORFOLK & W. RY. CO. v. TRAUTWEIN.**

No. 8213.

Circuit Court of Appeals, Sixth Circuit.

May 10, 1940.

James I. Boulger, of Columbus, Ohio (Bannon, Bannon & Lynn, of Portsmouth, Ohio, on the brief), for appellant.

W. K. Sullivan, of Cleveland, Ohio (Newcomb, Nord & Hornbeck, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Appellee, plaintiff below, sued appellant for damages for personal injuries. Appellant challenges the denial of a directed verdict and the correctness of certain features of the court's charge and of certain special instructions.

The action was brought under the Federal Employers' Liability Act. The evidence is, that appellant operated a line of railroad in interstate commerce between the states of Ohio and West Virginia and that appellee was in the employ of appellant as a bridge carpenter.

For about three weeks before appellee was injured he and the crew with which he was working were engaged in repairing a bridge over which appellee operated interstate trains. At the time he was injured appellee was painting the bridge. We think that he was engaged in work so closely related to interstate transportation as to be a part of it, Chicago & N. W. Ry. v. Bolle, 284 U.S. 74, 78, 52 S.Ct. 59, 76 L.Ed. 173, and that the District Court had jurisdiction. We do not deem it necessary to undertake a differentiation of the decided cases on this particular subject.

The bridge was about twelve feet above the ground and the two abutments were about thirty feet apart. In order to do the painting a scaffold was necessary. It was constructed at the south end of the bridge under the supervision of an assistant foreman and by a crew of four men. Three pine boards were used, each of them 2 inches by 10 inches and 16 feet long and weighing from 75 to 100 pounds. The railway running north and south over the bridge had double tracks. The bridge had two outside girders and one center girder between the tracks. The scaffold was constructed under the southbound track by suspending, by means of lines, a board parallel with and just outside the south girder and another board parallel with the middle girder. A third board was laid crosswise from one to the other of the parallel boards. The whole was suspended about a foot and a half or two feet below the girders. The lines were tied to the parallel boards near each end thereof and were secured to some part of the bridge overhead, except the line tied to the south end of the outside board, which ran up the outside of the girder across its top and down the inside, where it was again attached to the board. It was thus looped around the girder. Appellee testified that he did not at any time know that the line was tied back to the board.

There is evidence tending to show that this particular line was tied by one Medla, a fellow workman of appellee, but appellee was called away before it was tied. He was sent to paint at another point on the bridge and after working there for an hour or more was sent by the foreman to paint the outside of the south girder. To get to his working place he stepped from the top of the northern abutment of the bridge on to the north end of the outside board. He had with him a bucket of paint and a brush and he painted one section of the girder between two "stiffeners," a space of about four feet. He then stepped sideways some three or four feet to the next section and just as he started to stoop over to put the bucket down, the board suddenly kicked under the girder and knocked him off. Appellee testified that it seemed to him "like it scissored or sheared right under the girder," that it scissored or sheared against the cross plank. There is evidence tending to show that in its normal position about half of the width of the board was under the girder, leaving only about six inches upon which appellee could stand and paint.

We think that the motion for a directed verdict was properly overruled. It was peculiarly a question for the jury to determine whether Medla, who looped the line, should have anticipated that the weight of the painter upon the board would have so tensioned the looped line as to cause the inside end thereof to tilt the board and pull it under the girder. There were circumstances to indicate that this occurred and fairminded men might reasonably conclude that Medla should have anticipated it. If he should, it follows that appellee is responsible under the Federal Employers' Liability Act, Title 45, Ch. 2, Sec. 51, U.S.C., 45 U.S.C.A. § 51.

We cannot say as a matter of law that appellee assumed the risk of standing upon the board. This was likewise a question for the jury. Appellee testified that he did not know that the lines were tied differently at each end of the board and it was a question for the jury to determine whether the loop arrangement at the south end of the board was observable to and appreciated by him while he was at work. The risk was something more than an ordinary one.

It is urged that the court erred in reading to the jury, in the course of the charge, the allegations of the petition, (1) that the scaffold was not constructed in the customary way; (2) that it was constructed under the direction of appellant's foreman upon whose skill and knowledge appellee relied; and (3) that appellee did not know its dangerous and unsafe condition. The objection is upon the ground that there was no evidence to support any of these averments. We have pointed out the evidence touching the last two, and with reference to the first, there was evidence tending to show that a three board scaffold with the parallel boards swung lengthwise instead of crosswise of the bridge was unusual. These allegations were traversed in appellant's answer and it was altogether proper for the court to point out to the jury the issues joined.

Appellant complains that the court erred in reading the Federal Employers' Liability Act to the jury by the terms of which an employer is liable for injuries resulting from negligence by reason of any defect or insufficiency in its cars, engines, appliances, machinery, tracks, roadbed, works, boats, wharves or other equipment; and in then stating to the jury that if "you find that the defendant violated this statute, and was negligent in any of the respects condemned by the statute *charged in the petition,* and that such negligence resulted as a proximate cause in injury to the plaintiff, then the defendant would be liable to plaintiff." (Italics ours.)

It will be noted that the court did not predicate a charge of negligence upon any other features than those "charged in the petition." We do not think the jury could have been misled as to the issues.

Finally, it is said that the following special request read to the jury was erroneous, to wit: "The plaintiff in this case assumed the risks and dangers ordinarily incident to his employment. The plaintiff had a right to assume that his employer had exercised proper care with respect to providing a reasonably safe place to work and a reasonably safe scaffold upon which to perform his duties and is not to be treated as assuming a risk attributable to the employer's negligence, if you find the employer was negligent, until he became aware of it, or it was so plainly observable that he must be presumed to have known of it. The plaintiff was not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which resulted from the employer's negligence."

We think the request embodies a fair statement of the applicable law. We find no prejudicial error in the charge or upon the record, and the judgment is affirmed.