ANTOINETTE COVIELLO, DEFENDANT-RESPONDENT, v.
NEW YORK CENTRAL RAILROAD COMPANY, A BODY
CORPORATE, PLAINTIFF-APPELLANT.

Submitted February 14, 1941—Decided April 25th, 1941.

For the appellant, *Wall, Haight, Carey & Hartpence* (*John
A. Hartpence* and *Charles J. Gormley,* of counsel).

For the respondent, *Collins & Corbin* (*Edward A. Markley*
and *Charles W. Broadhurst,* of counsel).

The opinion of the court was delivered by

HEHER, J. The Federal Employers' Liability Act (45
*U. S. C. A.,* §§ 51, *et seq.*) does not speak of interstate commerce in the technical sense. While the earlier cases gave the enactment a much broader purview, the criterion of employment in such commerce now is whether the employe, at the time of the injury, was "engaged in interstate trans-

portation, or in work so closely related to it as to be practically a part of it?" *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.*, 239 *U. S.* 556; 36 *S. Ct.* 188; 60 *L. Ed.* 436; *Chicago and N. W. Railroad Co.* v. *Bolle*, 284 *U. S.* 74; 52 *S. Ct.* 59; 76 *L. Ed.* 173. We entertain the view that the deceased emloye was in that category. Concededly, his duties "were to oil and grease the switches, as well as clean and replenish the oil in the switch lamps on" appellant's "tracks * * * in its freight yard located at Weehawken, New Jersey;" and the "yards * * * and the tracks on which" decedent "performed the work * * * on November 10th, 1936" (the day of the fatal mishap) "were used" by appellant "as a classification yard * * * almost entirely, if not exclusively, for the movement and classification of freight cars, loaded and empty, moving in transportation between the several states of the United States."

As said in *Rossi* v. *Pennsylvania Railroad Co.*, 115 *N. J. L.* 1; *affirmed*, 117 *Id.* 148, there is no formula which will automatically classify every case. Each case is resolved by its own circumstances, viewed in the light of the legislative purpose. The physical maintenance of tracks, switches and switch lamps employed in interstate transportation is an incident of such commerce, and is so closely identified with transportation as to be, to all intents and purposes, a part of it. Such is the intendment of the cited statute as read by the ultimate interpretative authority. Indeed, transportation itself is vitally dependent upon such service; and therefore the test of direct and immediate relation to interstate commerce in the legislative sense is met. There is not that remoteness of service which excludes the employment from the statutory class. It is an "intimate and integral part" of interstate transportation, to borrow the language of Mr. Justice Clarke in *Kinzell* v. *Chicago, Milwaukee and St. Paul Railroad Co.*, 250 *U. S.* 130; 39 *S. Ct.* 412; 63 *L. Ed.* 893. Plainly, the tracks are an indispensable adjunct of transportation; and it is evident that service of this character is essential to that function, and so is likewise inseparable from it. This is implicit in the holding of the very case which differentiated between "transportation" and "commerce" and

found that the statutory category is not inclusive of employments so remote from interstate transportation that they cannot be deemed to be virtually a part of it. It was there pointed out that the workman "was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation." *Shanks* v. *Delaware, Lackawanna and Western Railroad Co., supra.* And in the later case of *Minneapolis and St. Louis Railroad Co.* v. *Winters,* 242 *U. S.* 353; 37 *S. Ct.* 170; 61 *L. Ed.* 358, Mr. Justice Holmes distinguished between the making of repairs, in a roundhouse, upon an engine which had been used in hauling trains carrying both intrastate and interstate freight, and "the matter of repairs upon a road permanently devoted to commerce among the states." He said: "An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended upon its employment at the time, not upon remote probabilities or upon accidental later events."

In *Erie Railroad Co.* v. *Collins,* 253 *U. S.* 77; 40 *S. Ct.* 450; 64 *L. Ed.* 790, an employe of an interstate railway company assigned to duty in a signal tower and pumping station was held to be engaged in interstate commerce within the view of the cited statute while engaged in starting a gasoline engine at the pumping station for the pumping of water into a tank for daily supply to engines "in whichever commerce engaged." Referring to *Chicago, B. and Q. Railroad Co.* v. *Harrington,* 241 *U. S.* 177; 36 *S. Ct.* 517; 60 *L. Ed.* 941, Mr. Justice McKenna said that the employment was there "considered too distant from interstate commerce to be a part of it or to have 'close or direct relation to interstate transportation.'" As to the case then in hand, he continued:

"Plaintiff was assigned to duty in the signal tower and in the pump house, and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes, therefore, within the indicated test. It may be said, however, that this case is concerned exclusively with what was to be done, and was done, at the pump house. This may be true, but his duty there was performed and the instruments and facilities of it were kept in readiness for use and were used on both commerces, and the test of the cases satisfied." This case was overruled in *Chicago and E. I. Railroad Co.* v. *Industrial Commission,* 284 *U. S.* 296; 52 *S. Ct.* 151; 76 *L. Ed.* 304, where it was held that an employe injured while attempting to oil an electric motor used to supply power for hoisting coal into a chute, whence it was to be conveyed to locomotives principally employed in the movement of interstate freight, was not in "such close or direct relation to interstate transportation" as is contemplated by the statute, and the doctrine of the Harrington case, *supra,* was reaffirmed. In that case the injured employe was engaged in taking coal from storage tanks to bins or chutes for the use of locomotives employed in both interstate and intrastate traffic.

In *Philadelphia and Reading Railroad Co.* v. *DiDonato,* 256 *U. S. 327;* 41 *S. Ct.* 516; 65 *L. Ed.* 955, the servant was employed as a flagman at a grade crossing "to signal both intrastate and interstate trains." His employment "concerned both kinds of trains, without distinction between them or character of service. He was an instrument of safety for the conduct of both. And, in the course of his employment, he was killed by a train whose character is not disclosed." Mr. Justice McKenna, in reversing a judgment awarding compensation under the Workmen's Compensation Act of the State of Pennsylvania, declared: "In *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.,* 229 *U. S.* 146; 57 *L. Ed.* 1125; 33 *S. Ct.* 648, this court had occasion to consider the instrumentalities of commerce and to determine whether they should have intrastate or interstate character. The case was concerned with mechanism—tracks and bridges—but there

was a human element as well; one that was engaged in keeping the mechanisms in repair; and it was decided that, as they were instruments of interstate as well as of intrastate commerce, he was engaged in interstate commerce. It was said: 'True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is nonetheless an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce.' * * * But granting there is a basis for the classification that counsel make, we think the present case falls within the Pedersen case. The service of a flagman concerns the safety of both commerces, and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity and commit it to confusing controversies. And besides, as observed by the Supreme Court of the State of California in *Southern P. Co.* v. *Industrial Accident Commission, supra,* DiDonato's duty had other purpose than the prevention of a disaster to a particular train. It has purpose as well to the condition of the tracks, and their preservation from disorder and obstructions. This service and the other service cannot be separated in duty and responsibility. * * * This case, therefore, has importance beyond the interest of the parties to it. Its principle and example, reinforcing the Pedersen case and the cases based upon it, make a test by which future cases may be assigned to intrastate or interstate commerce, and mark the power and policies that may be necessary or convenient to either."

In the subsequent case of *Industrial Accident Commission* v. *Davis,* 259 *U. S.* 182; 42 *S. Ct.* 489; 66 *L. Ed.* 888, the same justice said: "And there is a difference in the instrumentalities. In some, the tracks, bridges, and roadbed and equipment in actual use, may be said to have definite character, and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character, according to circumstances; and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily

occur. There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time; or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations—the relations of a workshop—its employments and employes having cause in the movements that constitute commerce, but not being immediate to it. And it is this separation that gives character to the employment, as we have said, as being in or not in commerce." See, also, *New York, New Haven and Hartford Railroad Co.* v. *Bezue,* 284 *U. S.* 415; 52 *S. Ct.* 205; 76 *L. Ed.* 370.

And in the Shanks case, *supra,* the Supreme Court cited with approval a case in which it was held that there was the requisite employment in interstate commerce where a car repairer was engaged in replacing a draw bar in a car then in use in such commerce. In *Southern Pacific Co.* v. *Industrial Accident Commission,* 251 *U. S.* 259; 40 *S. Ct.* 130; 64 *L. Ed.* 258, a lineman received a fatal electric shock while wiping insulators actually supporting a wire which carried electric power manufactured at the railroad's power house and used for the movement of cars in both interstate and intrastate commerce; and Mr. Justice McReynolds declared that "power is no less essential than tracks or bridges to the movement of cars," and the work at which deceased was engaged was therefore "directly and immediately connected with interstate transportation and an essential part of it." The inquiry is as to "the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce." *Industrial Accident Commission* v. *Davis, supra.* In *Rossi* v. *Pennsylvania Railroad Co., supra,* this court held that one directly engaged in fueling a locomotive used in interstate transportation was within the statutory class, since the "provision of fuel for the generation of motive power was indispensable to the continued operation of the railroad's interstate transportation business; and the servicing of the locomotive in question did not constitute an interruption, in any sense of the term, of the interstate service in which the locomotive was employed—its char-

acter as an instrumentality of such commerce remained unchanged."

For analogous cases, see *Kinzell* v. *Chicago, Milwaukee and St. Paul Railroad Co., supra; Tanona* v. *New York, New Haven and Hartford Railroad Co.,* 301 *Mass.* 589; 18 *N. E. Rep.* (2d) 163; *Rader* v. *Baltimore and Ohio Railroad Co.,* 108 *Fed. Rep.* (2d) 980, *cert. den. Baltimore and Ohio Railroad Co.* v. *Rader,* 309 *U. S.* 682; 60 *S. Ct.* 722; 84 *L. Ed.* 1026, where a section laborer engaged in clearing brush from the right of way of a railroad engaged in both intrastate and interstate commerce was deemed to be within the statute; *Miller* v. *Central Railroad Co.,* 58 *Fed. Rep.* (2d) 635; *cert. den. Central Railroad Co.* v. *Miller,* 287 *U. S.* 617; 53 *S. Ct.* 18; 77 *L. Ed.* 536, where the engineer of a work train used to pick up spent rails along interstate tracks was held to be engaged in interstate commerce; and *Illinois Central Railroad Co.* v. *Industrial Commission,* 349 *Ill.* 451; 182 *N. E. Rep.* 626; *cert. den. Industrial Commission* v. *Illinois Central Railroad Co.,* 288 *U. S.* 606; 53 *S. Ct.* 397; 77 *L. Ed.* 981, where an employe, whose duty it was to assist in cleaning switches to facilitate the movement of interstate trains was struck by a truck in the railroad yard, and he was held to be engaged in interstate commerce within the intendment of the statute.

The judgment of the Supreme Court is accordingly reversed; and the judgment of the Compensation Bureau dismissing the petition for compensation under *R. S.* 1937, 34:15-1, *et seq.,* is affirmed.

*For affirmance*—CASE, DONGES, PORTER, DEAR, WELLS, WOLFSKEIL, JJ. 6.

*For reversal*—THE CHANCELLOR, BODINE, HEHER, COLIE, RAFFERTY, HAGUE, THOMPSON, JJ. 7.