**ENTERPRISE BOX CO. v. FLEMING.**

No. 9909.

Circuit Court of Appeals, Fifth Circuit.

Feb. 26, 1942.

Rehearing Denied March 24, 1942.

898

M. Caraballo and John G. Graham, both of Tampa, Fla., for appellant.

Irving J. Levy, Asst. Sol. in Charge of Litigation, U. S. Department of Labor, of Washington, D. C., and Geo. A. Downing, Regional Atty., U. S. Dept. of Labor, of Atlanta, Ga., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

On the complaint of appellee, the court below entered a judgment enjoining the Enterprise Box Company from violating subsections (1), (2), and (5) of Section 15 (a) of the Fair Labor Standards Act.[1] Appealing from that judgment, the appellant acknowledges that it did not comply with the requirements of the Act in respect to minimum wages or maximum hours or the manner of keeping its records; but it contends that these provisions are not applicable to it for the reason that it is not engaged in the production of goods for commerce within the meaning of the Act.

Appellant is a Florida concern engaged in the manufacture and sale of cigar boxes. All of its manufacturing is done within that state, and all of its sales are made to cigar manufacturers in Florida. The cigar manufacturers use the boxes as containers for the cigars, and sell and distribute the major portion of such cigars in interstate commerce. Appellant is familiar with the interstate character of the use to which its products are put. It denies, however, that it is engaged in the production of goods for commerce for three reasons: (1) Because it does not actually sell its product in interstate commerce, (2) because the purpose for which the boxes are used prevents them, by act of Congress, from again being used for that purpose, with the result that the economic value of the containers is thereby destroyed and the tobacco manufacturers become the ultimate consumers, and (3) since appellant's business practice in selling only to purchasers within Florida was found by the court to be not a subterfuge designed to escape the provisions of the Act, it could not be said to have violated Section 15 (a) (1) of the Act or to come within its coverage.

The Act defines the language "production of goods for commerce". The phrase is extremely comprehensive, and embraces working in any manner upon any article or subject of commerce, except goods already delivered to the ultimate consumer, or in any process or occupation necessary to the production thereof, for shipment among the several states or from one state to any place outside thereof. 29 U.S.C.A., Sec. 203(b), (i) and (j). So defined, there remains no doubt that the appellant falls within the scope of the clause

---

[1] 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

if the cigar boxes were articles or subjects of commerce.

As we understand it, appellant acknowledges that its products would be articles and subjects of commerce but for the fact that they were used by the purchasers thereof in Florida to encase cigars. The gravamen of its contention is that each box was manufactured for primary use as a container for cigars, and that, upon once being used for that purpose, it could not lawfully be so used again; that its economic value accordingly was destroyed by its use in Florida, preventing its entry into competition with cigar boxes manufactured elsewhere after its introduction into the flow of interstate commerce; and that the character of the boxes as "goods" ceased prior to, and never became a part of, interstate commerce.

We do not think that the Act is subject to this limited construction. When the appellant engaged in the manufacture of cigar boxes, which were articles and subjects of commerce, and was aware that its product would ultimately find its way into interstate commerce, it became subject to the provisions of the Act as one engaged in the production of goods for commerce. Section 15(a) (1) of the Act prohibits the sale of goods, with knowledge that shipment thereof in commerce is intended, unless the seller has complied with Sections 6 and 7 thereof. This appellant sold goods, knowing that shipment thereof in commerce was intended, without compliance with those sections. It is of no consequence that its activities in connection with the product were at an end prior to any shipment of the boxes in interstate commerce.[2] Nor is the interstate character of the operation affected by the lack, if any, of economic value in the boxes after the original purchase and use. The regulatory aspects of the commerce power extend to all subjects within the grant, whether. the nature thereof be commercial or otherwise.[3]

Appellant's theory presents the case as analogous to a manufacturer of ice who sells his product to interstate carriers for refrigeration purposes, though in such case the carrier is more clearly the consumer. Yet, in that case, the manufacturer has been held subject to these provisions of the Act. Fleming v. Altantic Company, D.C., 40 F. Supp. 654. See also Fleming v. Hitchcock, D.C., 38 F.Supp. 358. Likewise, this court recently has held that employees engaged in drilling an oil well are producing goods for commerce although those employees cease all operations connected with the production of oil prior to reaching the producing sand. Warren-Bradshaw Drilling Co. v. Hall, supra. Production for interstate commerce includes the production of goods that the employer expects to move in interstate commerce. United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430. The Fair Labor Standards Act, therefore, is applicable to this appellant.

Section 15(a) (1) of the Act makes it unlawful for any person engaged in the production of goods to sell any goods, in the production of which any employee was employed without compliance with the Act, with knowledge that shipment or sale thereof in interstate commerce is intended. The final contention of the appellant seems to be that this section cannot constitutionally be construed to apply to a manufacturer who sells his product intrastate, in the ordinary course of business and not intentionally to defeat the Act, knowing that the purchaser thereof intends to ship that product in interstate commerce.

It is sufficient to say that the validity of an exercise of the commerce power is to be determined by what is regulated, not by what the regulation affects, and Congress may, by appropriate legislation, regulate intrastate activities where they have a substantial effect on interstate commerce.[4] By the express language employed

[2] Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., Dec. 9, 1941, 124 F.2d 42.

[3] Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. —; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

[4] McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579: Shreveport Case (Houston, E. & W. T. R. Co. v. United States), 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341:

Federal Trade Commission v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191; Chicago & N. W. Ry. Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 76 L.Ed. 173; Santa Cruz Co. v. N. L. R. B., 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Troppy v. La Sara Farmers Gin Co., 5 Cir., 113 F. 2d 350.

in this section, Congress has made manifest its judgment that the regulation of such intrastate commerce is necessary to the effective regulation of interstate commerce. It would be practically impossible to regulate the interstate shipment without exercising control over the initial steps toward such transportation.[5]

The judgment appealed from is affirmed.

[5] Cf. United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.