ROBERT McFADDEN, PETITIONER-DEFENDANT IN CERTIORARI, v. PENNSYLVANIA RAILROAD COMPANY, RESPONDENT-PROSECUTOR IN CERTIORARI.

Submitted May 4, 1943—Decided October 22, 1943.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Wall, Haight, Carey & Hartpence* (*Charles J. Gormley,* of counsel).

For the defendant, *Joseph C. Paul.*

The opinion of the court was delivered by

HEHER, J. The Workmen's Compensation Bureau awarded to prosecutor's employee, McFadden, compensation for permanent total disability under *R. S.* 34:15–1, *et seq.;* and the Hudson Court of Common Pleas affirmed the judgment.

The employer maintains that the evidence does not sustain the finding of a compensable accident, and that, even though it does, there is no proof of a resultant permanent injury; and that, at all events, the parties were both engaged in interstate commerce and the judgment is therefore *coram non judice.*

The facts are in the main free from dispute. McFadden was employed to service tugboats operated by prosecutor in the New York harbor in both interstate and intrastate commerce. The place of his employment was a pier maintained by prosecutor on the Hudson River at Jersey City, New Jersey, designated as "Pier 'H.'" Here, railroad cars devoted to the transportation of freight in interstate and intrastate commerce were moved through the harbor on steel floats and barges propelled by tugs. These cars were thus conveyed to and from various points on the New York shore in Manhattan, The Bronx and Long Island, and also piers at Hoboken and Bayonne in New Jersey. Interstate commerce predominated. Some of these towboats were propelled by steam and the others by Diesel engines. It was McFadden's duty to pump oil into the docked Diesel-engined boats from storage tanks nearby, and to draw oil from barrels into small containers for the use of the steam tugs. These barrels each had a capacity of 50 gallons; and they were "rolled up on a skid—high enough" to "put a five-gallon can below the tap and fill it." Cans were carried to the raised barrel by members of the crew, filled by McFadden on written order, and returned to the boat by the carrier. Oils for fuel, lubrication and lighting were thus supplied to the tugs. McFadden testified that on January 5th, 1940, while rolling a full barrel up the "skid," with the assistance of a co-employee, he "felt a catch like a stitch" just below the ribs on the left side. He "didn't think much of it at the time;" and he remained at his post. He worked the next day, Saturday, but on the following Monday he was physically unable to resume his labors. He has not worked since; and it is fairly inferable that a heart ailment has incapacitated him, at least for laborious work. The condition was diagnosed as "effort angina," with a basic coronary sclerosis.

We have no occasion to determine whether the claimant has sustained the burden of proof of an industrial accident. If there was such an accident, he was engaged in interstate commerce, and his rights and remedies are determined exclusively by the Federal Employers' Liability Act, approved April 22d, 1908, as amended on August 11th, 1939. 35 *Stat. at L.* 65,

*ch*. 149; 53 *Stat. at L*. 1404, *ch*. 685; 45 *U. S. C. A*., §§ 51, *et seq. Vide Erie Railroad Co.* v. *Winfield,* 244 *U. S.* 170; 37 *S. Ct.* 556; 61 *L. Ed.* 1057.

Prior to the amendment of 1939, the test of employment in interstate commerce, within the intendment of the federal statute, was whether the employee, at the time of the injury, was engaged in interstate transportation or in work so closely related to it as to be practically a part of it. *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.,* 239 *U. S.* 556; 36 *S. Ct.* 188; 60 *L. Ed.* 436; *Chicago and Northwestern Railroad Co.* v. *Bolle,* 284 *U. S.* 74; 52 *S. Ct.* 59; 76 *L. Ed.* 173. As to the latter category, the question was one of remoteness and degree. It was essential that the service be an "intimate and integral part" of interstate transportation. *Kinzell* v. *Chicago, Milwaukee and St. Paul Railroad Co.,* 250 *U. S.* 130; 39 *S. ·Ct.* 412; 63 *L. Ed.* 893; *Chicago and E. I. Railroad Co.* v. *Industrial Commission,* 284 *U. S.* 296; 52 *S. Ct.* 151; 76 *L. Ed.* 304; *Coviello* v. *New York Central Railroad Co.,* 126 *N. J. L.* 536. The amendment of 1939 incorporated in section 1 of the act the definitive provision that an employee of a common carrier in interstate commerce, *"any part* of whose duties as such employee shall .be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce," as therein set forth, is to be deemed employed by the carrier in such commerce, and therefore entitled to the benefits of the statute.

However the case in hand might have been viewed under the old law, claimant plainly was engaged in interstate commerce within the intendment of the amendment of 1939, *supra.* It would seem that, standing alone, what he was doing at the time of the occurrence of the alleged accident, *i. e.,* preparation for the servicing of tugboats engaged in interstate commerce, reasonably takes the category of work "in furtherance" of "interstate commerce." The evident design of the amendment was to modify the interpretation placed upon the Federal Employers' Liability Act by the Federal Supreme Court, and to enlarge the class of beneficiaries. Where "any part" of the employee's duties shall be the "furtherance" of

interstate commerce, "or shall, in any way directly or closely and substantially, affect such commerce," he comes within the statutory classification. It is noteworthy that the Congress employed the term "commerce" rather than "transportation," notwithstanding that the supreme federal judicial authority had long since found a substantial difference between these terms. It was held that the words "transportation" and "commerce" convey different meanings, and are therefore not interchangeable; that "commerce" covers the whole field of which transportation is only a part, and the word of narrower signification conveys the "practical sense" in which the Congress spoke; that the business of a railroad is not to carry on commerce generally; that it is engaged in the transportation of persons and things in commerce, and hence the test of whether an employee at the time of his injury was engaged in interstate commerce, within the meaning of the federal act, was whether he was engaged in interstate transportation or in work so closely related thereto as to be practically a part of it. *Shanks* v. *Delaware, Lackawanna and Western Railroad Co., supra; Chicago and Northwestern Railroad Co.* v. *Bolle, supra.* It is but fair to presume, therefore, that the term "commerce" was employed in the amendment in its general, technical sense, unless the next succeeding clause, under the maxim *"noscitur a sociis,"* is to be deemed a qualification of that usage. *Lewis' Sutherland Statutory Construction* (2d ed.), § 414.

The legislative history may be helpful in the search for the intention. The report of the Senate Committee on the Judiciary reveals that the object of this amendment was "to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations." It was pointed out that under the judicial interpretations, particularly in the Shanks case, *supra,* it was very often difficult, if not impossible, for the injured employee to determine his status, with consequent failures of justice through the operation of the statute of limitations where the employee

misconceived his remedy; and that, since the "preponderance of service performed by railroad transportation employees is in interstate commerce," public policy will be served by the provision that "If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefit of the act." At a hearing before a sub-committee of the Senate Committee on the Judiciary, this particular clause of the proposed measure was, on the motion of Senator Austin, amended to read as follows: "or in any way directly, or closely and substantially affect such commerce." Senator Austin is quoted as saying: "Now, on page 2, line 18 and 19, occur the words 'or in any way.' Unless I am convinced I ought not to do that for some good reason, I think I will move to substitute for those words that occur and recur in many cases of recent date as defining what kind of effect on interstate is comprehended by the commerce clause of the Constitution. Those are the words, 'directly, closely and substantially.' I would substitute those words for the words 'or in any way.'" He continued: "My amendment was to substitute for the words 'or in any way' the words 'directly, closely and substantially.' That is the law as it is interpreted by the Supreme Court of the United States in National Labor Relations Board against Jones & Laughlin Steel Corporation (301 *U. S.* 1; 57 *S. Ct.* 615; 81 *L. Ed.* 893; 108 *A. L. R.* 1352); in the Bituminous Coal Conservation Act of 1935, in connection with N.R.A. Codes, and in Carter versus Carter Coal Co., and others (298 *U. S.* 238; 56 *S. Ct.* 855; 80 *L. Ed.* 1160)." *Vide Southern Pacific Co.* v. *Industrial Accident Commission,* 19 *Cal.* (2d) 271; 120 *Pac. Rep.* (2d) 880; *Ermin* v. *Pennsylvania Railroad Co.,* 36 *Fed. Supp.* 936.

It is the settled rule that, where the language of an act of the Congress is not free from doubt, the judicial authority may, in aid of construction, have recourse to the legislative history, committee reports and explanatory statements made by members in charge on the presentation of the measure for passage; but this course is not permissible where the terms used are clear and unambiguous. *McLean* v. *United States,*

226 *U. S.* 374; 33 *S. Ct.* 122; 57 *L. Ed.* 260; *Pennsylvania Railroad Co.* v. *International Coal Mining Co.,* 230 *U. S.* 184, 198; 33 *S. Ct.* 893; 57 *L. Ed.* 1446; *Duplex Printing Press Co.* v. *Deering,* 254 *U. S.* 443, 475; 41 *S. Ct.* 172; 65 *L. Ed.* 354; *Wright* v. *Vinton Branch of Mountain Trust Bank of Roanoke, Va.,* 300 *U. S.* 440; 57 *S. Ct.* 556; 81 *L. Ed.* 736.

But however the particular act of claimant at the time of the asserted accident might have been classified under the pre-existing statute, it is evident that the pumping of oil into Diesel-motored towboats, concededly instrumentalities employed in interstate commerce, constituted service in furtherance of interstate commerce within the purview of the amendment. And since "part" of the claimant's duties as such employee consisted of the direct fueling of Diesel-engined boats, his service "directly," "closely" and "substantially" affected interstate commerce, and he is therefore within the statutory class. Even under the old law, such was deemed work so intimately identified with interstate transportation as to be practically a part of it. *Tonsellito* v. *New York Central and Hudson River Railroad Co.,* 87 *N. J. L.* 651; *affirmed, sub nom. New York Central and Hudson River Railroad Co.* v. *Tonsellito,* 244 *U. S.* 360; 37 *S. Ct.* 620; 61 *L. Ed.* 1194; *Rossi* v. *Pennsylvania Railroad Co.,* 115 *N. J. L.* 1; *affirmed,* 117 *Id.* 148.

The judgment is reversed, without costs; and the cause is remanded with direction to dismiss the petition for compensation.